1  C.D. Michel – SBN 144258
   Anna M. Barvir – SBN 268728
2  Konstadinos T. Moros – SBN 306610
   MICHEL & ASSOCIATES, P.C.
3  180 E. Ocean Blvd, Suite 200
   Long Beach, CA 90802
4  Telephone: (562) 216-4444
   Facsimile: (562) 216-4445
5  Email: cmichel@michellawyers.com

6  Attorneys for Plaintiffs

7

8              **DISTRICT COURT OF THE UNITED STATES**

9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 | ENDIR BRISENO, NEIL OPDAHL-    | Case No.:
   | LOPEZ, and RODNEY WILSON,      |
11 | individually and on behalf of all others | **CLASS ACTION**
   | similarly situated,            |
12 |                                | **COMPLAINT FOR:**
   |              Plaintiffs,        |
13 |                                | 1. **VIOLATION OF SECOND**
   |                 v.             |    **AMENDMENT RIGHT TO KEEP &**
14 |                                |    **BEAR ARMS [42 U.S.C. § 1983];**
   | ROBERT A. BONTA, in his official |
15 | capacity as Attorney General for the | 2. **VIOLATION OF FOURTEENTH**
   | State of California; LUIS LOPEZ, in his |    **AMENDMENT RIGHT TO**
16 | official capacity as Acting Chief of the |    **SUBSTANTIVE DUE PROCESS [42**
   | California Department of Justice Bureau |    **U.S.C. § 1983];**
17 | of Firearms; CALIFORNIA         |
   | DEPARTMENT OF JUSTICE; and      | 3. **VIOLATION OF FOURTEENTH**
18 | DOES 1-10,                      |    **AMENDMENT RIGHT TO**
   |                                |    **PROCEDURAL DUE PROCESS [42**
19 |              Defendants.        |    **U.S.C. § 1983].**
20
21                                    **DEMAND FOR JURY TRIAL**
22
23
24
25
26
27
28

Plaintiffs ENDIR BRISENO, NEIL OPDAHL-LOPEZ, and RODNEY WILSON (collectively, "PLAINTIFFS"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants ROBERT BONTA, in his official capacity as Attorney General of the State of California, CALIFORNIA DEPARTMENT OF JUSTICE, and DOES 1-10 (collectively, "DEFENDANTS"), alleging the following upon information and belief based upon personal knowledge;

## INTRODUCTION

1.     Franklin Armory, Inc., a federally licensed firearms manufacturer, manufactures a series of firearms which are not considered "rifles," "shotguns," or "handguns" as those terms are defined by California law and which Franklin Armory, Inc., has designated with the model name "Title 1."

2.     Franklin Armory's Title 1 firearms come in various calibers such as 5.56 NATO (a centerfire caliber) and .17 WSM (a rimfire caliber).

3.     Franklin Armory's Title 1 firearms were—at the time Plaintiffs and all those similarly situated made a deposit to initiate the purchase of one or more Title 1 firearms—lawful to possess, sell, transfer, purchase, loan, or otherwise be distributed within California through licensed California firearm dealers to persons who are not otherwise prohibited from possessing firearms, though subsequent changes in the law have limited the market for centerfire variants of Franklin Armory's Title 1 series of firearms.

4.     Defendants, however, unlawfully erected and maintained technological and administrative barriers that acted to prevent the completion of transfers of these otherwise lawful firearms via the Dealer's Record of Sale Entry System ("DES").

5.     Indeed, Defendants intentionally delayed taking any action to remedy the known defects of the DES—stalling until the California Legislature passed Senate Bill 118 ("SB 118"), which now places restrictions on the purchase, transfer, possession, and registration of centerfire variants of Franklin Armory's Title 1 series of firearms not possessed before September 1, 2020.

6.     Plaintiffs and all those similarly situated can no longer take lawful possession

CLASS ACTION COMPLAINT

of or register the Franklin Armory Title 1 firearms for which they made deposits.

7.     The above-captioned Plaintiffs thus petition this court for declaratory relief and injunctive relief relating to Defendants' implementation of unlawful technological and administrative barriers preventing the lawful transfer of firearms and their refusal to timely perform their duties relating to the sale, loan, transfer, purchase, and processing of firearms, including the centerfire variants of Franklin Armory's Title 1 series of firearms, that are neither "rifles," "shotguns," or "handguns" as those terms are defined under state law.

## JURISDICTION & VENUE

8.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because the action arises under the constitution and laws of the United States, thus raising federal questions.

9.     The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the state of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

10.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

11.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367 because such claims arise out of the same case or controversy as the federal claims.

12.     Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

/ / /

/ / /

CLASS ACTION COMPLAINT

**PARTIES**

**[Plaintiffs]**

13.     Plaintiff ENDIR BRISENO is a natural person residing in the city of Torrance, in the county of Los Angeles, California. He is a law-abiding citizen and is not prohibited from owning or possessing firearms or ammunition under state or federal law. On or before August 6, 2020, Plaintiff Briseno paid a deposit and entered into a contract with Franklin Armory for the purchase of one or more Franklin Armory Title 1 firearms chambered in 5.56 NATO (a centerfire cartridge). Plaintiff Briseno was, however, barred from receiving his lawful firearm(s) because of technological and administrative barriers that Defendants intentionally and unlawfully erected to prevent such transfers. And, with the passage of SB 118 by the California Legislature, he can no longer take the steps required to register and lawfully possess the centerfire Title 1 firearms for which he made a deposit. But for Defendants' conduct complained of, he would have completed the purchase and taken possession of the Title 1 firearm(s) for which he paid a deposit before August 6, 2020. If Defendants are enjoined from enforcing the laws and regulations complained of herein, Plaintiff Briseno would immediately complete the purchase and take possession of the Title 1 firearm(s) for which he paid a deposit.

14.     Plaintiff NEIL OPDAHL-LOPEZ is a natural person residing in the city of San Dimas, in the county of Los Angeles, California. He is a law-abiding citizen and is not prohibited from owning or possessing firearms or ammunition under state or federal law. On or before August 6, 2020, Plaintiff Opdahl-Lopez paid a deposit and entered into a contract with Franklin Armory for the purchase of one or more Franklin Armory Title 1 firearms chambered in 5.56 NATO (a centerfire cartridge). Plaintiff Opdahl-Lopez was, however, barred from receiving his lawful firearm(s) because of technological and administrative barriers that Defendants intentionally and unlawfully erected to prevent such transfers. And, with the passage of SB 118 by the California Legislature, he can no longer take the steps required to register and lawfully possess the centerfire Title 1 firearms for which he made a deposit. But for Defendants' conduct complained of, he

4

would have completed the purchase and taken possession of the Title 1 firearm(s) for which he paid a deposit before August 6, 2020. If Defendants are enjoined from enforcing the laws and regulations complained of herein, Plaintiff Opdahl-Lopez would immediately complete the purchase and take possession of the Title 1 firearm(s) for which he paid a deposit.

15.     Plaintiff RODNEY WILSON is a natural person residing in the city of Montebello, in the county of Los Angeles, California. He is a law-abiding citizen and is not prohibited from owning or possessing firearms or ammunition under state or federal law. On or before August 6, 2020, Plaintiff Wilson paid a deposit and entered into a contract with Franklin Armory for the purchase of one or more Franklin Armory Title 1 firearms chambered in 5.56 NATO (a centerfire cartridge). Plaintiff Wilson was, however, barred from receiving his lawful firearm(s) because of technological and administrative barriers that Defendants intentionally and unlawfully erected to prevent such transfers. And, with the passage of SB 118 by the California Legislature, he can no longer take the steps required to register and lawfully possess the centerfire Title 1 firearms for which he made a deposit. But for Defendants' conduct complained of, he would have completed the purchase and taken possession of the Title 1 firearm(s) for which he paid a deposit before September 1, 2020. If Defendants are enjoined from enforcing the laws and regulations complained of herein, Plaintiff Wilson would immediately complete the purchase and take possession of the Title 1 firearm(s) for which he paid a deposit.

16.     All members of the proposed class are natural persons and law-abiding individuals who reside in the state of California. They each deposited money and entered into a contract with Franklin Armory on or before August 6, 2020, for the purchase of one or more Franklin Armory Title 1 firearms chambered in 5.56 NATO (a centerfire cartridge). All members of the proposed class were, however, barred from receiving their lawful firearms because of technological and administrative barriers that Defendants intentionally and unlawfully erected to prevent such transfers. And, with the passage of SB 118 by the California Legislature, the proposed class members can no longer take the steps required to register and lawfully

CLASS ACTION COMPLAINT

possess the centerfire Title 1 firearms for which they made deposits. But for Defendants' allegedly unlawful conduct, members of the proposed class would have completed the purchase and taken possession of the Title 1 firearm(s) for which they paid deposits before August 6, 2020. If Defendants are enjoined from enforcing the laws and regulations complained of herein, members of the proposed class would immediately complete the purchase and take possession of the Title 1 firearm(s) for which they paid a deposit.

**[Defendants]**

17.     Defendant ROBERT BONTA is the Attorney General and chief law enforcement officer of the state of California. Defendant Bonta is charged by article V, section 13, of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. He also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of their respective officers. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement of the meaning of the laws of California, including restrictions on the transfer of firearms, including the Franklin Armory Title 1 series of firearms at issue here. He is sued in his official capacity.

18.     Defendant LUIS LOPEZ is the Acting Chief of the California Department of Justice Bureau of Firearms ("BOF"). As such, he is authorized to execute, interpret, and enforce the laws of the state of California pertaining to, among other things, the submission and collection of DROS information to facilitate lawful firearm transfers in California via the DES or other approved alternative method.  He is sued in his official capacity.

19.     Defendant CALIFORNIA DEPARTMENT OF JUSTICE ("DOJ") is a lawfully constituted executive agency charged with implementing, enforcing, and administering the state of California's firearm laws and systems for processing firearm transfers and loans. The DOJ is under the direction and control of the Attorney General. Cal. Gov't Code § 15000. The DOJ is composed of the Office of the Attorney General and those other divisions, bureaus, branches, sections or other units as the Attorney General may create within the department pursuant to Section 15002.5. *Id.* § 15001. The BOF was created by the Attorney General within the Division of Law Enforcement for the purpose of designing, implementing, and enforcing California's

CLASS ACTION COMPLAINT

firearm laws, rules, regulations, and support systems. The DOJ is responsible for the design, development, maintenance, and enforcement of the DES, the system by which licensed California firearm dealers submit purchaser and firearm information to the DOJ for processing in accordance with California's firearm transfer laws and regulations.

20.    Plaintiffs do not know the true names and capacities of Defendants DOE 1 through 10, inclusive, who are therefore sued by such fictitious names. Plaintiffs allege on information and belief that each person or entity designated as DOE 1 through 10 is responsible in some capacity or manner for the adoption or enforcement of the unlawful regulations as alleged in this Complaint. Plaintiffs pray for leave to amend to show the true names, capacities, and/or liabilities of DOE DEFENDANTS 1 through 10, when they are determined.

**CLASS ALLEGATIONS**

21.    Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of themselves and all persons similarly situated, as a member of the proposed class (hereafter "the Class") defined as follows: All persons within the state of California who made earnest money deposits for the purchase of one or more centerfire variants of Franklin Armory's Title 1 series of firearms before August 6, 2020 (i.e., the effective date of Penal Code section 30515(a)(9), 30658, and 30900(c)).

22.    Plaintiffs, and each of them, represent and are members of the Class, consisting of all persons within the state of California who made earnest money deposits for the purchase of one or more centerfire variants of Franklin Armory's Title 1 series of firearms before August 6, 2020.

23.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that thousands of persons made earnest money deposits for the purchase of one or more centerfire variants of Franklin Armory's Title 1 series of firearms before August 6, 2020.

24.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and

all the Class members sustained the same injury which arose out of Defendants' wrongful conduct complained of herein—that is, because of Defendants' alleged conduct, they each were barred from completing the transfer of and taking possession of the centerfire Title 1 firearms for which they made earnest money deposits in violation of their rights under the Second and Fourteenth Amendments.

25.     Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. The common legal and factual questions ,which do not vary between Class members, and which may be determined without reference to the individual circumstances of any individual Class member include, but are not limited to:

a.      Whether Defendants, through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to keep and bear arms in violation of the Second Amendment to the United States Constitution.

b.      Whether Defendants,  through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

c.      Whether Defendants, through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to procedural due

process in violation of the Fourteenth Amendment to the United States Constitution.

26.     Plaintiffs are representative parties who will fully and adequately protect the interests of the Class members. Plaintiffs have retained counsel who are qualified and competent to bring both class action and constitutional litigation, including Second and Fourteenth Amendment litigation. Plaintiffs have no interests which are contrary to or in conflict with those of the Class they seek to represent.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all members of the Class is impracticable. Even if every single member of the Class could afford to bring litigation individually, the court system could not bear it. It would be unduly burdensome to the courts in which individual litigation of each of the *thousands* of Class members' claims would be brought.

28.     Further, individualized litigation would invite the potential for varying, inconsistent, or contradictory judgments that would impose varying standards of conduct on Defendants. That is, Plaintiffs and the Class members seek declaratory and injunctive relief, including orders requiring Defendants to allow Plaintiffs and all Class members to submit firearm purchaser information for, finalize the transfer of, take possession of, and register pursuant to Penal Code section 30900(c) the centerfire Title 1 firearms for which they paid earnest money deposits before August 6, 2020. If thousands of individualized actions are brought on behalf of each Class member, varying, inconsistent, or contradictory judgments would result in Defendants being ordered to allow some, but not all, Class members to finalize their centerfire Title 1 firearms purchases and register those firearms as required by state law—even though all Class members have the same interests in this case.

29.     Further, the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not parties to those

actions or would substantially impair the ability of non-party Class members to protect their interests. Specifically, because this action deals primarily with legal questions about the scope and application of the Second Amendment right to keep and bear arms, as well as the Fourteenth Amendment rights to substantive and procedural due process, each individual decision would have the potential of creating persuasive or binding precedent on those legal issues that would either be dispositive of those claims for non-party Class members or otherwise substantially impair the ability of such Class members to protect their own interests. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

30.     Defendants through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, have violated the Second and Fourteenth Amendment rights of Plaintiffs and members of the Class. Defendants have thus acted or refused to act in respects generally applicable to all members of the Class, making declaratory and injunctive relief appropriate with regard to the members of the Class as a whole.

## GENERAL ALLEGATIONS
### [Defendants' General Duties]

31.     The California Constitution vests the office of the Attorney General, currently held by Defendant Bonta, with great powers over the lives of the citizens of the state. Indeed, subject to the powers and duties of the Governor, the Attorney General is the "chief law officer" of the state, and it is his or her duty "to see that the laws of the state are uniformly and adequately enforced." Cal. Const., art. V, § 13.

32.     In addition to being the "chief law officer" and the state's chief attorney, the Attorney General is also the head of the DOJ, Cal. Gov't Code § 12510, the executive agency charged with implementing, enforcing, and administering the laws of the state of California, including the state's firearms laws.

CLASS ACTION COMPLAINT

33.     The Attorney General and DOJ must thus provide oversight, enforcement, education, and regulation of many facets of California's firearms laws. The Attorney General and DOJ primarily perform these duties through DOJ's BOF, which is currently led by Acting Chief Defendant Lopez.

34.     The BOF's mission statement emphasizes its obligation to educate and promote legitimate and lawful firearm sales, and is as follows:

> The Bureau of Firearms serves the people of California through education, regulation, and enforcement actions regarding the manufacture, sales, ownership, safety training, and transfer of firearms. Bureau of Firearms staff are leaders in providing firearms expertise and information to law enforcement, legislators, and the general public in a comprehensive program to promote legitimate and responsible firearms possession and use by California residents.

(Emphasis added.)

35.     Defendants' proper performance of their duties ensures that the laws of California, including the state's firearms laws, are administered fairly, enforced vigorously, and understood uniformly throughout California

**[California's Relevant Definitions]**

36.     Over the years, the California Legislature has used its lawmaking authority to make the state's firearms laws the most comprehensive, complex, and restrictive in the nation, with over 800 state statutes regulating firearms and firearms transactions within the state.

37.     As part of its legislative scheme for the control of firearms, California regulates firearms in a wide variety of ways. Some laws focus on the transfer of firearms (e.g., conducting background checks and registering firearms), some focus on the use of firearms (e.g., regulating the carrying of firearms in public places), some focus on where firearms may be (e.g., prohibiting firearms within school zones), and some focus on the technological aspects of particular firearms (e.g., regulating firearms based upon their function, design, and physical characteristics).

38.     California has adopted specific definitions related to the technological aspects of particular firearms. For example, state law defines the term "firearm" in several ways, generally

11

including "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." Cal. Penal Code § 16520.

39.     State law further divides the term "firearm" into two types for transfer regulation: "long guns" and "handguns."

40.     Under state law, "long guns" are those firearms that do not qualify as handguns. For purposes of Penal Code section 26860, " 'long gun' means any firearm that is not a handgun or a machinegun." Cal. Penal Code § 16865.

41.     Under state law, " '[h]andgun' means any pistol, revolver, or firearm capable of being concealed upon the person." *Id.* § 16640. The statutory definition does not "prevent a device defined as a 'handgun' from also being found to be a short-barreled rifle[1] or a short-barreled shotgun.[2]" *Id.*

42.     Within the definition of "handgun," the terms " '*firearm capable of being concealed upon the person*,' '*pistol*,' and '*revolver*' apply to and include any device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and that has a barrel less than 16 inches in length. These terms also include any device that has a barrel 16 inches or more in length which is designed to be interchanged

---

[1] " 'Short-barreled rifle' means any of the following: (a) [a] rifle having a barrel or barrels of less than 16 inches in length; (b) [a] rifle with an overall length of less than 26 inches; (c) [a]ny weapon made from a rifle (whether by alteration, modification, or otherwise) if that weapon, as modified, has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (d) [a]ny device that may be readily restored to fire a fixed cartridge which, when so restored, is a device defined in subdivisions (a) to (c), inclusive; and (e) [a]ny part, or combination of parts, designed and intended to convert a device into a device defined in subdivisions (a) to (c), inclusive, or any combination of parts from which a device defined in subdivisions (a) to (c), inclusive, may be readily assembled if those parts are in the possession or under the control of the same person." Cal. Penal Code § 17170.

[2] " 'Short-barreled shotgun' means any of the following: (a) [a] firearm that is designed or redesigned to fire a fixed shotgun shell and has a barrel or barrels of less than 18 inches in length; (b) [a] firearm that has an overall length of less than 26 inches and that is designed or redesigned to fire a fixed shotgun shell; (c) [a]ny weapon made from a shotgun (whether by alteration, modification, or otherwise) if that weapon, as modified, has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (d) [a]ny device that may be readily restored to fire a fixed shotgun shell which, when so restored, is a device defined in subdivisions (a) to (c), inclusive; and (e) [a]ny part, or combination of parts, designed and intended to convert a device into a device defined in subdivisions (a) to (c), inclusive, or any combination of parts from which a device defined in subdivisions (a) to (c), inclusive, can be readily assembled if those parts are in the possession or under the control of the same person." *Id.* § 17180.

CLASS ACTION COMPLAINT

with a barrel less than 16 inches in length." *Id.* § 16530 (emphasis added); *see also id.* §§ 17010, 17080.

43.     Below these two classifications (i.e., long gun and handgun) are several statutorily defined firearm subtypes, the most common of which are "rifles" and "shotguns" under the classification for "long guns."

44.     Under state law, a "rifle" is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger." *Id.* § 17090.

45.     Under state law, a "shotgun" is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger." *Id.* § 17190.

46.     The state of California uses these types and subtypes to regulate firearms in distinct ways based upon their design and technology.

47.     While a device may be considered a "firearm" under California law, it may also fall outside of the statutorily defined subcategories due to the design and features of the firearm. In other words, a "firearm" can be neither a "rifle," nor a "shotgun," nor a "handgun." For ease of reference throughout this complaint, Plaintiffs refer to firearms that are neither "rifles," nor "shotguns," nor "handguns," as those terms are defined by California law,  as "firearms with an undefined subtype."

**[Firearms with an Undefined Subtype and the Title 1 Firearm]**

48.     Franklin Armory's Title 1 series of firearms are "firearms with an undefined subtype," as their overall design render the devices to be a "firearm," but not "rifles," "shotguns," or "handguns," as those terms are defined by California law.

49.     As "firearms," Franklin Armory's Title 1 series of firearms and other "firearms with an undefined subtype," including but not limited to buntline revolvers 16 or more inches long,

CLASS ACTION COMPLAINT

butterfly grip firearms, and barreled action firearms, are subject to California "firearm" transfer laws.

50.     "Firearms with an undefined subtype" have been manufactured for decades and have been known to Defendants for at least the last ten years.

51.     For instance, the Browning 1919 A4 firearms began production in approximately 1936 and would be deemed "firearms with an undefined subtype." On March 28, 2000, DOJ issued a letter to Mr. Tim Bero, President of TNW, Inc., about a conversation that they had relating to the Browning .30 Cal. M-1919 A4 and A6, as well as the Browning .50 Cal. M2 semiautomatic rifles configured with a pistol grip or butterfly grip and clarifying that said firearms would not constitute "assault weapons" under California law at that time. *See* Letter from Randy Rossi, Firearms Division Director, California Department of Justice, to Tim Bero, President, TNW, Inc. (Mar. 28, 2000) attached hereto as **Exhibit A**.

52.     Similarly, on November 3, 2004, the Director of the Firearms Division of the DOJ issued a letter stating that a U.S. Ordinance Semi-60 configured with a butterfly grip, which would constitute a "firearm with an undefined subtype," was not an "assault weapon" under California law at that time. *See* Correspondence between Jason Davis, Trutanich Michel, LLP, and Randy Rossi, Firearms Division Director, California Department of Justice (Nov. 3, 2004) attached hereto as **Exhibit B**.

53.     One of the most common types of firearms in the United States are barreled action firearms. Barreled action firearms are sold with and without stocks to allow the end user to configure the firearm as desired. Barreled action firearms sold or configured without a stock are "firearms with an undefined subtype." Such firearms are currently sold nationwide. A simple search of one online retailer, Brownells.com, for "barreled receivers" returns dozens of barreled action firearms currently available for sale that would constitute "firearms with an undefined subtype" (and not bare receivers).

54.     Other examples of "firearms with an undefined subtype" include firearms that are chambered for shot shells, including but not limited to the O.F. Mossberg & Sons,

Inc. model Cruiser chambered in 12 gauge with an 18" barrel, which does not satisfy the definition of "rifle," "shotgun," or "handgun," at those terms are defined under California law.

55.     Finally, the Franklin Armory Title I series of firearms was originally designed in 2012, at which time the BOF was notified of the firearms' design and features and of Franklin Armory's intent to manufacture, produce, sell, and distribute the firearm within the state of California.

**[Overview of California's Firearm Transfer Scheme]**

56.     The state of California has reserved the entire field of licensing and registration of firearms to itself. Cal. Penal Code § 53071.

57.     With limited exception, nearly all firearm transfers within California must be processed through a dealer licensed by the federal government, the state of California, and the local authorities to engage in the retail sale of firearms. Id. §§ 26700, 27545.

58.     As part of the firearm transfer process in California, every prospective firearm purchaser must meet various criteria and provide specific documentation.

59.     In addition to providing a valid government-issued identification, *id.* §§ 16400, 26845, 27510, prospective firearm purchasers must also:

- Complete the Bureau of Alcohol, Tobacco, Firearms, and Explosives' Form 4473;
- Complete the California Dealer's Record of Sale ("DROS") form, *see id.* § 28160;
- Pass a comprehensive background check performed by the state of California, *id.* § 29820, which reviews records in nearly a dozen different databases;
- Pay the background check fee;
- Pay the Firearm Safety & Enforcement fee;
- Pay the Firearm Safety Device fee, *id.* § 23635;
- Undergo a 10-day waiting period, *id.* § 26815;

- Obtain a Firearm Safety Device, *id.* § 23635; and

- Possess a Firearm Safety Certificate ("FSC"), *id.* § 31615.

60.     Certain aspects of licensing and registration have been delegated to Defendants. This includes the licensing of California retailers engaged in the sale of firearms, as well as administration of the recordkeeping, background checks, and fees related to the sale, lease, loan, or transfer of firearms.

61.     For example, state law mandates that "[a]s required by [Defendant DOJ], every dealer shall keep a register or record of electronic or telephonic transfer in which shall be entered" certain information relating to the transfer of firearms. *Id.* § 28100. And Defendant DOJ must "prescribe the *form* of the register and the record of electronic transfer pursuant to Section 28105." *Id.* § 28155 (emphasis added).

62.     Penal Code section 28160(a) requires that the register or record of electronic transfer contain the following detailed information:

- Date and time of sale;

- Make of firearm;

- Peace officer exemption status under the provisions listed in subdivision (c) of Section 16585, and the agency name;

- Any applicable waiting period exemption information;

- California Firearms Dealer number issued pursuant to Article 1 (commencing with Section 26700) of Chapter 2;

- The purchaser's handgun safety certificate number, if applicable;

- Manufacturer's name, if stamped on the firearm;

- Model name or number, if stamped on the firearm;

- Serial number, if applicable;

- Other number, if more than one serial number is stamped on the firearm;

- Any identification number or mark assigned to the firearm pursuant to section 23910;

- If the firearm is not a handgun and does not have a serial number,

CLASS ACTION COMPLAINT

identification number, or mark assigned to it, a notation as to that fact;

- Caliber;
- ***Type of firearm***;
- Whether the firearm is new or used;
- Barrel length;
- Color of the firearm;
- Full name of purchaser;
- Purchaser's complete date of birth;
- Purchaser's local address;
- If current address is temporary, complete permanent address of purchaser;
- Identification of purchaser;
- Purchaser's place of birth (state or country);
- Purchaser's complete telephone number;
- Purchaser's occupation;
- Purchaser's gender;
- Purchaser's physical description;
- All legal names and aliases ever used by the purchaser;
- Yes or no answer to questions that prohibit purchase;
- Signature of purchaser;
- Signature of salesperson, as a witness to the purchaser's signature;
- Salesperson's certificate of eligibility number, if the salesperson has obtained a certificate of eligibility;
- Name and complete address of the dealer or firm selling the firearm as shown on the dealer's license;
- The establishment number, if assigned;
- The dealer's complete business telephone number;
- Any information required by Chapter 5 (commencing with Section 28050);
- Any information required to determine whether subdivision (f) of Section

CLASS ACTION COMPLAINT

27540 applies;

- ▪ A statement of the penalties for signing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register; and
- ▪ A statement informing the purchaser of certain information.

63.  Significantly, while information regarding the "type" of firearm (e.g., "long gun" or "handgun") must be included, information about the "subtype" of a firearm is not expressly mandated by Penal Code section 28160(a) or any other provision of the Penal Code.

64.  To lawfully transfer any firearm, the licensed California dealer through which the firearm is transferred *must* receive, verify, retain, and/or transmit *all* required firearm purchaser information to Defendant DOJ. *Id.* §§ 28175, 28215(d).

65.  The state of California has thus made licensed firearm dealers state agents in connection with the gathering and dispensing of information on the purchase of firearms. *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987). As such, licensed firearm dealers are required to submit only information that is "true, accurate, and complete." Cal. Code Regs., tit. 11, § 4210(b)(1)(6).

66.  Since 2003, state law has mandated that electronic transfer be the exclusive means for transmitting the required firearm purchaser information to Defendant DOJ but permitted Defendant DOJ to make limited exceptions. *Id.* § 28205(d).

67.  The method of electronic transfer that Defendants have established under section 28205(c) for the submission of firearm purchaser information required by section 28160(a) is the DES. The DES is a web-based application designed, developed, and maintained by Defendants and used by firearm dealers to record and submit the statutorily required firearm purchaser information to the DOJ.

68.  California law also mandates that Defendant DOJ *shall* examine specified records to determine whether the applicant is prohibited from owning or possessing firearms once it receives the required firearm purchaser information from the licensed

18

firearm dealer. *Id.* § 28220.

69.     The state did *not* authorize Defendant DOJ to indiscriminately prevent otherwise lawful firearm sales. Rather, the state has granted DOJ the limited authority to stop sales for certain specified reasons. For example, DOJ may halt the sale of a firearm if a purchaser is prohibited from lawfully possessing or obtaining a firearm. *See e.g.*, *id.* § 28220.

70.     The state did *not* authorize Defendant DOJ to indiscriminately delay otherwise lawful firearm sales. Rather, the state granted DOJ the limited authority to delay sales for specified reasons. For example, DOJ may delay if its records show that the purchaser may be prohibited, but additional research is needed to make a final determination. *See e.g.*, *id.* §28220(d) & (f)(1)(A) (authorizing a 30-day delay under specified circumstances but permitting the release of the firearm by the dealer if DOJ cannot determine the purchaser to be ineligible within the 30-day period). DOJ may also delay a sale if the Dealer's Record of Sale ("DROS") application contains any blank spaces or inaccurate, illegible, or incomplete information, preventing identification of the purchaser or the handgun or other firearm to be purchased.

71.     As alleged more fully below, Defendants have failed to comply with their mandates, making it impossible for firearm purchasers and licensed firearm dealers acting as agents of the DOJ to submit true, accurate, and complete information, effectively barring the sale of centerfire variants of Franklin Armory's Title 1 series of firearms and other "firearms with an undefined subtype."

72.     Thus, while Defendant DOJ is the gatekeeper of firearm transactions within the state, its ability to delay or deny the lawful sale and transfer of firearms is exceedingly limited to expressly prohibited activities.

**[Senate Bill 118 and Its Impact on Centerfire Variants of Franklin Armory's Title 1 Firearms]**

73.     On or about August 6, 2020, Governor Gavin Newsom signed into law SB 118, a budget trailer bill that, as relevant here, added sections 30515(a)(9), 30685, and

30900(c) to the California Penal Code. The relevant statutes took effect immediately upon signing.

74.     The addition of Penal Code section 30515(a)(9) via SB 118, expanded the state's definition of "assault weapon" to include any "semiautomatic centerfire firearm that is not a rifle, pistol, or shotgun, that does not have a fixed magazine" and has any one of the following features:

- Pistol grip that protrudes conspicuously beneath the action of the weapon;
- Thumbhole stock;
- Folding or telescoping stock;
- Grenade launcher or flare launcher;
- Flash suppressor;
- Forward pistol grip;
- Threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer; or
- Second handgrip.

Cal. Penal Code § 30515(a)(9)(A)-(I).

75.     In California, under Penal Code section 30605, it is unlawful to possession any firearm designated as an "assault weapon" unless an exemption applies.

76.     Penal Code section 30685, which was adopted as part of SB 118, exempts from Penal Code section 30605 the possession of any firearm constituting an "assault weapon" under Penal Code section 30515(a)(9) if: (1) "Prior to September 1, 2020, the person would have been eligible to register that assault weapon pursuant to subdivision (c) of Section 30900"; (2) "[t]he person lawfully possessed that assault weapon prior to September 1, 2020"; and (3) "[t] he person registers the assault weapon by January 1, 2022, in accordance with subdivision (c) of Section 30900."

77.     Penal Code section 30900(c), which was adopted as part of SB 118, establishes the registration requirements for firearms designated "assault weapons" pursuant to Penal Code section 30515(a)(9) and mandates that Defendant DOJ "adopt

20

1  regulations for the purpose of implementing" sections 30900(c) and 30515(a)(9).

2      78.   Under the definition of "assault weapon" expanded by SB 118 via Penal

3  Code section 30515(a)(9), centerfire variants of Franklin Armory's Title 1 series of

4  firearms are now considered "assault weapons" under California law.

5      79.   Because centerfire variants of Franklin Armory's Title 1 series of firearms are

6  now considered "assault weapons" under Penal Code section 30515(a)(9), it is a crime to

7  possess a centerfire Title 1 firearm *unless* the person (1) was eligible to register the

8  firearm under Penal Code section 30900(c) before September 1, 2020; (2) possessed the

9  firearm before September 1, 2020; *and* (3) registers the firearm by January 1, 2022,

10 pursuant to Penal Code section 30900.

### [Nature of Dispute]

12     80.   As part of the design, implementation, maintenance, and enforcement of the

13 DES, Defendants mandated the submission of information relating to firearm "subtypes."

14     81.   Specifically, by design, when the DES user is inputting the designated

15 information into the DES, they must select the firearm type (i.e., "long gun" or

16 "handgun") from a dropdown menu.

17     82.   Until 5:00 a.m. on October 1, 2021, upon selecting "long gun," the DES was

18 designed and functioned to automatically populate a new dropdown menu including *three*

19 options for firearm "subtype": "rifle," "rifle/shotgun," and "shotgun."

20     83.   In order to complete the electronic form and submit the required firearm

21 purchaser information for a "long gun," the licensed firearm dealer was required to select

22 one of the three options for "long gun" "subtypes." But, as alleged above, there are many

23 "long guns," including centerfire variants of Franklin Armory's Title 1 series of firearms,

24 that are neither "rifles" nor "shotguns," as those terms are defined by California law.

25     84.   Unlike the dropdown fields that populate for "Color," "Purchaser Place of

26 Birth," and Seller Place of Birth," each of which contains a catchall option labelled

27 "Other," the DES dropdown field for "long guns" contained no such option until October

28 1, 2021—some fourteen months after the relevant provisions of SB 118 went into effect.

85.    The actual and practical effect of the design of the DES was that licensed dealers could not submit complete and accurate firearm purchaser information to Defendant DOJ through the DES for centerfire Title 1 firearms because such firearms do not meet the statutory definition of either "rifles" or "shotguns," as those terms are defined by California law. And, under California Code of Regulations, title 11, § 4210(b)(1)(6), firearm dealers are prohibited from entering inaccurate information within the system.

86.    Though Penal Code section 28205(c) authorizes Defendant DOJ to adopt an alternative procedure for the submission of firearm purchaser information, Defendant DOJ neither adopted nor implemented an alternative procedure for the submission of firearm purchaser information related to the transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, before August 6, 2020, when SB 118 took effect.

87.    Without an alternative procedure for submission of the firearm purchaser information, the DES is the only method of submitting the statutorily required firearm purchaser information to permit the lawful transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms.

88.    And because dealers could not fully and accurately submit the statutorily required firearm purchaser information through the DES for "long guns" that are "firearms with an undefined subtype," they could not accept or process applications from prospective purchasers of such firearms before October 1, 2021. Cal. Penal Code § 28215(c).

89.    At all times relevant to Plaintiffs' claims then, the DES effectively prevented licensed firearm dealers from proceeding with the lawful sale, transfer, or loan of "long guns" that are "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms.

90.    As part of Defendants' design, implementation, maintenance, and enforcement of the DES, Defendants have instituted a technological and administrative barrier that functions and serves as a ban on the sale, transfer, acquisition, loan, or other

processing of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, through licensed firearms dealers in California.

91.     But before August 6, 2020—the effective date of SB 118—no state or federal law prevented the sale, transfer, acquisition, or loan of centerfire variants of Franklin Armory's Title 1 series of firearms within California.

92.     It was instead Defendants' refusal to remove the technological and administrative barriers they themselves erected that prevented the otherwise lawful transfer of Franklin Armory's centerfire Title 1 firearms to law-abiding, non-prohibited persons.

93.     These barriers could have been alleviated if Defendants had simply updated DES to provide the option to select "Other" from the dropdown menu of "long gun" "subtypes"—an option the DES provides in dropdown menus for the firearm's "Color," the "Purchaser Place of Birth," and "Seller Place of Birth."

94.     These barriers could also have been alleviated by permitting the DES user to proceed without selecting a "subtype," but the DES, as then configured, did not allow the user to complete and submit the application without selecting a "subtype."

95.     These barriers could also have been alleviated if Defendants had authorized any of a multitude of other means under the authority granted them by Penal Code section 28205(c), including but not limited to, instructing DES users to proceed by selecting preauthorized designated options and identifying the firearm as "other" in one of the "comment" fields within the DES.

96.     Plaintiffs allege under information and belief that Defendants knew the DES deficiencies complained of herein and intended them from inception.

97.     Indeed, Defendants have known of the DES deficiencies complained of herein at least since the introduction of the Franklin Armory Title 1 series of firearms in 2012, and they have been asked to correct said defects.

98.     Indeed, Defendants and Franklin Armory were in communication about the

23

design and features of the Title 1 series of firearms since about 2012.

99.   At minimum, Defendants knew of the DES deficiencies complained of herein as of  October 24, 2019, when Franklin Armory expressly notified Defendants of the DES defects and Franklin Armory's inability to transmit Title 1 firearms to their customers because of said defects. *See* **Exhibit C**.

100.   Defendants neither corrected the DES, nor did they implement alternative procedures to facilitate the lawful transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title I series of firearms.

101.   Defendants had more than adequate and reasonable time to make the corrections necessary to permit the system to process "firearms with an undefined subtype," including but not limited to centerfire variants of Franklin Armory's Title 1 series of firearms, before September 1, 2020.

102.   Defendants had more than adequate and reasonable time to implement alternative procedures under Penal Code section 28205(c) for the lawful transfer of "firearms with an undefined subtype," including but not limited to centerfire variants of Franklin Armory's Title 1 series of firearms, before September 1, 2020.

103.   Indeed, Defendants were able to modify the DES to address a similar deficiency reported concurrently by Franklin Armory's counsel in the same letter dated October 24, 2019. Specifically, Franklin Armory reported to Defendant DOJ that the DES omitted the United Arab Emirates from the dropdown list of options for "Country of Birth." Defendant DOJ corrected that defect on or about November 26, 2019.

104.   After Franklin Armory submitted a Government Tort Claim under California's Tort Claims Act on November 20, 2019, Defendants informed Mr. Jason Davis, counsel for Franklin Armory, Inc., that the DOJ would make changes to the DES to correct the deficiencies described herein. But Defendants claimed it would take a few months to institute those changes.

105.   Defendants would not, in fact, update the DES to allow for the transfer of "firearms with an undefined subtype" until October 1, 2021—more than two years after

Franklin Armory informed Defendants of the defects that prevented the transfer of such firearms and about a year and a half after Franklin Armory and California Rifle & Pistol Association, Incorporated, sued Defendants in state court to have the defects corrected.

106.   Plaintiffs allege on information and belief that Defendants designed and developed alternative procedures, processes, and/or updates that would cure the deficiencies of the DES complained of herein but refused and/or intentionally delayed implementation of those alternatives.

107.   Plaintiffs allege on information and belief that Defendants designed, implemented, maintained, and enforced the DES to intentionally prevent the transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms.

108.   Plaintiffs allege on information and belief that Defendants continued with the deficiencies intentionally, delaying the necessary changes to the DES that would permit the lawful transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, to Plaintiffs and all members of the Class.

109.   As a result of the inability of dealers to submit true, accurate, and complete firearm purchaser information through the DES for "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, Franklin Armory was unable to transfer the centerfire Title 1 firearms reserved by Plaintiffs and all members of the Class who sought to lawfully purchase and take possession of the centerfire Title 1 firearms that they submitted deposits for.

110.   Defendants could have, if they desired, rectified this matter immediately upon learning of the deficiencies that Franklin Armory and others warned them of, but they instead chose to perpetuate the de facto ban on the sale of certain lawful firearms, including centerfire variants of Franklin Armory's Title 1 series of firearms, by way of institutionalized technological and administrative barriers.

111.   Plaintiffs allege on information and belief that Defendants acted in concert to

25

prevent the sale of centerfire variants of Franklin Armory's Title 1 series of firearms indefinitely.

112.   Specifically, on information and belief, Plaintiffs allege that Defendants conspired to and did delay any action that would permit the lawful sale, transfer, and delivery of "firearms with an undefined subtype" until legislation designed and intended to ban the sale, transfer, and delivery of centerfire variants of Franklin Armory's Title 1 series of firearms could be adopted by the California legislature and take effect.

113.   Plaintiffs allege on information and belief that the acts described above were performed by Defendants with the intent to delay and prohibit the sales and lawful transfer of centerfire variants of Franklin Armory's Title l series of firearms to Plaintiffs and all members of the Class until such time as legislation was developed, proposed, and passed designating such firearms as "assault weapons" under the Roberti-Roos Assault Weapons Control Act. *See* Email from Jennifer Kim, Principal Consultant, Assembly Budget Committee, to Jason Sisney Re: Assault Weapon TBL—Add'l Info FYI (June 24, 2020) attached hereto as **Exhibit D.**

114.   Plaintiffs allege on information and belief that Assembly Bill 88 ("AB 88"), introduced by the Committee on Budget and amended in the Senate to include the relevant expansion of California's "assault weapons" law in June 2020, was the result of Defendants' first attempt to redesignate centerfire variants of Franklin Armory's Title 1 series of firearms as "assault weapons." AB 88 did not pass.

115.   Plaintiffs allege on information and belief that Defendants' scheme was ultimately successful with the adoption of Penal Code sections 30515(a)(9), 30685, 30900(c) (the relevant portions of SB 118), which took effect on August 6, 2020—immediately designating centerfire variants of Franklin Armory's Title 1 series of firearms as "assault weapons" and effectively prohibiting the transfer of centerfire Title 1 firearms from Franklin Armory to Plaintiffs and all Class members.

116.   Because of Defendants' unlawful and unconstitutional conduct, as alleged herein, Plaintiffs (and all members of the Class) were unable to submit the statutorily

required firearm purchaser information via DES for, complete the lawful purchase of, and take possession of their centerfire Franklin Armory Title 1 firearms before the September 1, 2020 deadline imposed by Penal Code section 30685.

117.   As such, Defendants' actions and inaction described herein effectively denied Plaintiffs and all members of the Class of their right to due process, their Second Amendment rights, and their property rights, among other things.

## DECLARATORY RELIEF ALLEGATIONS

118.   There is an actual and present controversy between the parties that is definite and concrete and touches on the legal relations of the parties, as well as many thousands of people not before this Court whom Defendants are legally bound to serve.

119.   Plaintiffs contend that Defendants, by implementing, maintaining, and enforcing a non-statutory ban on the transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs (and all members of the Class) of their right to keep and bear arms for lawful purposes under the Second Amendment.

120.   Plaintiffs contend that Defendants, by implementing, maintaining, and enforcing a non-statutory ban on the transfer of "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs (and all members of the Class) of their rights to substantive and procedural due process under the Fourteenth Amendment before depriving them of their rights to acquire and possess lawful firearms, including the centerfire Title 1, for lawful purposes and to contract freely in lawful commerce without unlawful impairment by the government.

121.   Plaintiffs allege on information and belief that Defendants deny these contentions.

122.   Plaintiffs thus desire a judicial declaration concerning the parties' respective rights, duties, and responsibilities.

## INJUNCTIVE RELIEF ALLEGATIONS

123.   Plaintiffs have suffered and will continue to suffer harm by Defendants'

conduct as complained of herein insofar as that conduct violates Plaintiffs' right to keep and bear arms for lawful purposes under the Second Amendment to the United States Constitution.

124.   Plaintiffs have suffered and will continue to suffer harm by Defendants' conduct as complained of herein insofar as that conduct violates Plaintiffs' rights to substantive and procedural due process under the Fourteenth Amendment to the United States Constitution.

125.   If not enjoined by this Court, Defendants will continue to engage in the unconstitutional and unlawful conduct complained of herein.

126.   Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs who have suffered the violation of their constitutional rights.

**FIRST CAUSE OF ACTION**
**Violation of the Right to Keep and Bear Arms Under U.S. Const., Amend. II**
**42 U.S.C. § 1983**
**(By All Plaintiffs Against All Defendants)**

127.   Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 126, inclusive, as though fully set forth below.

128.   The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

129.   The Supreme Court has held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state and local governments. McDonald, 561 U.S. at 750.

130.   Defendants deprived Plaintiffs and all members of the Class of their right to keep and bear arms under the Second Amendment by implementing, maintaining, and enforcing a non-statutory ban via technological and administrative barriers prohibiting the application for, sale, transfer, delivery of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms.

131.   Plaintiffs contend that at all times before Penal Code sections 30515(a)(9),

30685, and 30900(c) went into effect on August 6, 2020, centerfire variants of Franklin Armory's Title 1 series of firearms were lawful to sell, transfer, deliver, and possess within California and that Plaintiffs (and all members of the Class) were entitled to apply for, purchase, receive, and possess the Title 1 firearms for which they had paid earnest money deposits. Plaintiffs and all members of the Class could not complete the purchase of said firearms, however, due to Defendants' conduct complained of herein.

132.   Defendants have no authority under either the California Constitution or any law adopted by the state legislature, including California's Dangerous Weapons laws, to unilaterally suspend the Second Amendment rights of Californians or to suspend state statutes regarding their obligation to facilitate the submission of firearm purchaser information in order to facilitate the lawful transfer of firearms that are legal to sell, transfer, deliver, and possess in California.

133.   What's more, Defendants had no authority to prohibit or otherwise disrupt the sale, transfer, delivery, or possession of centerfire variants of Franklin Armory's Title 1 series of firearms before the effective date of Penal Code sections 30515(a)(9), 30685, and 30900(c).

134.   Defendants had no legitimate, let alone compelling or substantial, interest in promulgating and enforcing a rule, practice, policy, or procedure that effectively barred the transfer of lawful firearms to law-abiding persons—a rule that Defendants had no authority to adopt in the first place.

135.   Plaintiffs and all members of the Class have suffered and will continue to suffer irreparable harm unless and until Defendants are enjoined from barring the delivery, sale, transfer, possession, and registration of those centerfire Title 1 firearms that could have been (and, but for Defendants' conduct complained of herein, would have been) lawfully sold, delivered, transferred, and possessed before the September 1, 2020 deadline imposed by Penal Code section 30685(b).

136.   Plaintiffs and all members of the Class are entitled to declaratory relief and injunctive relief restraining Defendants from resuming enforcement of a non-statutory ban

on "firearms with an undefined subtype" and from enforcing against them Penal Code sections 30515(a)(9), 30685, and 30900(c)—the provisions of SB 118 that prohibit the sale, transfer, delivery, and registration of centerfire Title 1 firearms not possessed before September 1, 2020—compliance with which, for Plaintiffs and all Class members, was thwarted and made impossible by Defendants' actions described herein.

## SECOND CAUSE OF ACTION
### Violation of the Right to Substantive Due Process Under U.S. Const., Amend. XIV
### 42 U.S.C. § 1983
### (By All Plaintiffs Against All Defendants)

137.   Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 136, inclusive, as though fully set forth below.

138.   The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV.  The government may only deprive individuals of these interests when doing so furthers a "legitimate governmental objective." *Lingle v. Chevron USA*, 544 U.S. 528, 542 (2005).

139.   Plaintiffs and all members of the Class have a liberty interest in the fundamental right to acquire and possess lawful firearms for lawful purposes, U.S. Const., amend. II, and in their right to contract freely in lawful commerce without unlawful or unauthorized impairment by the government, U.S. Const., art. I, §10; Cal. Const., art. I, § 9.

140.   Defendants deprived Plaintiffs and all members of the Class of these rights and liberties without due process of law in violation of the Fourteenth Amendment by implementing, maintaining, and enforcing a non-statutory ban via technological and administrative barriers prohibiting the application for, sale, transfer, and delivery of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms.

141.   Plaintiffs contend that at all times before 30515(a)(9), 30685, and 30900(c) went into effect on August 6, 2020, centerfire variants of Franklin Armory's Title 1 series

of firearms were lawful to sell, transfer, deliver, and possess within California and that Plaintiffs and all members of the Class were entitled to apply for, purchase, receive, and possess the Title 1 firearms for which they had paid earnest money deposits. Plaintiffs and all members of the Class could not complete the purchase of said firearms, however, due to Defendants' conduct complained of herein.

142.   Defendants have no authority under either the California Constitution or any law adopted by the state legislature, including California's Dangerous Weapons laws, to unilaterally suspend the constitutional rights of Californians or to suspend state statutes regarding their obligation to facilitate the submission of firearm purchaser information in order to facilitate the lawful transfer of firearms that are legal to sell, transfer, own, and possess in California.

143.   What's more, Defendants had no authority to prohibit or otherwise disrupt the sale, transfer, delivery, or possession of centerfire variants of Franklin Armory's Title 1 series of firearms before the effective date of Penal Code sections 30515(a)(9), 30685, and 30900(c).

144.   Defendants have no legitimate, let alone compelling or substantial, interest in promulgating and enforcing a rule, practice, policy, or procedure that effectively bars the transfer of lawful firearms to law-abiding persons—a rule that suspends the constitutional rights of Californians, including Plaintiffs and all members of the Class, and that Defendants had no authority to adopt in the first place.

145.   Plaintiffs and all members of the Class have suffered and will continue to suffer irreparable harm unless and until Defendants are enjoined from barring the delivery, sale, transfer, possession, and registration of those centerfire Title 1 firearms that could have been (and, but for Defendants' conduct complained of herein, would have been) lawfully sold, delivered, transferred, and possessed before the September 1, 2020 deadline imposed by Penal Code section 30685(b).

146.   Plaintiffs and all members of the Class are entitled to declaratory relief and injunctive relief restraining Defendants from resuming enforcement of a non-statutory ban

on "firearms with an undefined subtype" and from enforcing against them Penal Code sections 30515(a)(9), 30685, and 30900(c)—the provisions of SB 118 that prohibit the sale, transfer, delivery, and registration of centerfire Title 1 firearms not possessed before September 1, 2020—compliance with which, for Plaintiffs and all Class members, was thwarted and made impossible by Defendants' actions described herein.

### THIRD CAUSE OF ACTION
### Violation of Right to Procedural Due Process Under U.S. Const., Amend. XIV
### 42 U.S.C. § 1983
### (By All Plaintiffs Against All Defendants)

147.   Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 146, inclusive, as though fully set forth below.

148.   The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV.

149.   Due process requires that the state afford an individual an opportunity to be heard at a meaningful time and in a meaningful manner before taking action which materially infringes that person's liberty or property interests. *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Armstrong v. Manzo*, 380 U.S. 545 (1964); *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306 (1950).

150.   Plaintiffs and members of the Class have a liberty interest in the fundamental right to acquire and possess lawful firearms, including the Franklin Armory Title 1 series of firearms, buntline revolvers 16 or more inches long, butterfly grip firearms, and barreled action firearms, for lawful purposes, U.S. Const., amend. II, and in their right to contract freely in lawful commerce without unlawful or unauthorized impairment by the government, U.S. Const., art. I, §10; Cal. Const., art. I, § 9.

151.   Defendants deprived Plaintiffs and all members of the class of these rights and liberties without due process of law in violation of the Fourteenth Amendment by implementing, maintaining, and enforcing a non-statutory ban via technological barriers prohibiting the application for, sale, transfer, delivery of Title 1 firearms.

32

CLASS ACTION COMPLAINT

152.   Plaintiffs contend that at all times before the signing of SB 118, the Title 1 firearm was lawful to sell, transfer, deliver, and possess within California and that Plaintiffs and all members of the Class were entitled to apply for, purchase, receive, and possess Title 1 firearms for which they had paid earnest money deposits.

153.   Defendants have no authority under either the California Constitution or any law adopted by the California Legislature to unilaterally suspend the constitutional rights of Californians or to suspend California statutes regarding the obligation to facilitate the transfer of firearms.

154.   Defendants had no authority to promulgate, maintain, and enforce a non-statutory rule prohibiting the transfer of lawful firearms, including but not limited to centerfire variants of Franklin Armory's Title 1 series of firearms, that was not adopted in compliance with the mandatory procedural requirements of California's APA before the effective date of Penal Code sections 30515(a)(9), 30685, and 30900(c). *See Modesto City Schools v. Educ. Audits Appeal Panel*, 123 Cal.App.4th 1365, 1381 (2004).

155.   What's more, Defendants had no authority to prohibit or otherwise disrupt the sale, transfer, delivery, or possession of centerfire variants of Franklin Armory's Title 1 series of firearms before the effective date of Penal Code sections 30515(a)(9), 30685, and 30900(c).

156.   Plaintiffs, all members of the Class, and the public at large lacked any meaningful opportunity to seek redress of injuries caused by Defendants' conduct complained of herein or by which they could effectuate the transfer of the said firearms.

157.   Plaintiffs and all members of the Class have suffered and will continue to suffer irreparable harm unless and until Defendants are enjoined from barring the delivery, sale, transfer, possession, and registration of those centerfire Title 1 firearms that could have been (and, but for Defendants' conduct complained of herein, would have been) lawfully sold, delivered, transferred, and possessed before the September 1, 2020 deadline imposed by Penal Code section 30685(b).

158.   Plaintiffs and all members of the Class are entitled to declaratory relief and

injunctive relief restraining Defendants from resuming enforcement of a non-statutory ban on "firearms with an undefined subtype" and from enforcing against them Penal Code sections 30515(a)(9), 30685, and 30900(c)—the provisions of SB 118 that prohibit the sale, transfer, delivery, and registration of centerfire Title 1 firearms not possessed before September 1, 2020—compliance with which, for Plaintiffs and all Class members, was thwarted and made impossible by Defendants' actions described herein.

PRAYER

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray that this Court:

1.     Enter declaratory judgment under 28 U.S.C. § 2201 in Plaintiffs' favor holding that Defendants, through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to keep and bear arms guaranteed by the Second Amendment to the United States Constitution.

2.     Enter declaratory judgment under 28 U.S.C. § 2201 in Plaintiffs' favor holding that Defendants, through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to substantive due process guaranteed by the Fourteenth Amendment to the United States Constitution.

3.     Enter declaratory judgment under 28 U.S.C. § 2201 in Plaintiffs' favor holding that Defendants, through the conduct alleged herein, including the promulgation, maintenance, and enforcement a non-statutory rule prohibiting the transfer of lawful "firearms with an undefined subtype," including centerfire variants of Franklin Armory's Title 1 series of firearms, deprived Plaintiffs and all members of the Class of their right to procedural due process guaranteed by the Fourteenth Amendment to the United States

34

1    Constitution.

2        4.    Issue injunctive relief in Plaintiffs' favor and against Defendants:

3            (a)    Restraining Defendants, their employees, representatives, and all those

4        acting in concert with them or pursuant to their authority or control, from

5        resuming enforcement of a non-statutory ban on "firearms with undefined

6        subtypes," including but not limited to centerfire variants of Franklin

7        Armory's Title 1 firearms;

8            (b)    Ordering Defendants to allow Plaintiffs and members of the Class to

9        submit the statutorily required firearm purchaser information through DES

10       for, complete the transfer of, take possession of, and register pursuant to

11       Penal Code section 30900(c) those centerfire Title 1 firearms for which they

12       made earnest money deposits before August 6, 2020, notwithstanding the fact

13       that these firearms were not possessed by Plaintiffs or the Class members

14       before September 1, 2020;

15           (c)    Restraining Defendants, their employees, representatives, and all those

16       acting in concert with them or pursuant to their authority or control, from

17       enforcing Penal Code sections 30515(a)(9), 30685, and 30900(c) and any

18       agency rule or regulation adopted pursuant to section 30900(c) against any

19       Plaintiff or member of the Class until they are given a reasonable period

20       during which to submit the statutorily required firearm purchaser information

21       through DES, complete the transfer of, take possession of, and register those

22       centerfire Title 1 firearms for which they made earnest money deposits before

23       August 6, 2020.

24       5.    Award nominal damages to Plaintiffs;

25       6.    Award reasonable attorneys' fees and costs of suit incurred in this action

26   pursuant to 42 U.S.C. § 1988 and/or any other applicable law; and

27   ///

28   ///

CLASS ACTION COMPLAINT

7.     Grant such other and further relief as the Court may deem just and proper.

Date:  November 17, 2021                    Respectfully submitted,
                                            MICHEL & ASSOCIATES, P.C.


                                            s/ Anna M. Barvir
                                            Anna M. Barvir
                                            Attorneys for Plaintiffs

CLASS ACTION COMPLAINT