# EXHIBIT 6

C.D. MICHEL – SBN 144258
Anna Barvir – SBN 268728
Jason A. Davis – SBN 224250
Konstadinos T. Moros – SBN 306610
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: CMichel@michellawyers.com

Attorneys for Petitioners - Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| FRANKLIN ARMORY, INC. and CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF JUSTICE, ROBERT A. BONTA, in his official capacity as Attorney General for the State of California, and DOES 1-10,<br><br>Respondents-Defendants. | Case No. 20STCP01747<br><br>**PLAINTIFFS AND PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS THE FIRST, SECOND, AND EIGHTH CAUSES OF ACTION IN THE SECOND AMENDED COMPLAINT**<br><br>Date:       January 27, 2022<br>Time:       9:30 a.m.<br>Dept.:       85<br>Judge:      Hon. James C. Chalfant<br><br>[Filed concurrently with the Declaration of Anna M. Barvir in Support]<br><br>Action Filed:  May 27, 2020 |

**TABLE OF CONTENTS**

**Page**

Table of Contents ........................................................................................................ 2

Table of Authorities .................................................................................................... 3

Introduction ................................................................................................................. 5

Statement of Facts ....................................................................................................... 6

Argument ................................................................................................................... 10

I.     The Court Should Exercise its Discretion to Hear the First, Second, and Eighth Causes of Action Because They Involve a Dispute Over Issues of Broad Public Interest That Are Likely to Recur ........................................................................................................... 10

     A.     The Dispute Involves Issues of Broad Public Interest ...................................................... 11

     B.     The Dispute Involves Issues That Are Likely to Recur ................................................... 12

II.    The Court May Also Exercise Its Discretion to Hear The First, Second, and Eighth Causes of Action Because They Involve a Dispute Likely to Recur Between the Same Parties .................. 16

Conclusion ................................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.*,
  No. 15-cv-01482, 2015 WL 5569073 (N.D. Cal. Sept. 22, 2015) ........................ 17

*City of Fresno v. Press Commcns., Inc.*,
  (1994) 31 Cal.App.4th 32 .................................................................................... 11

*Cnty. of Los Angeles v. Davis*,
  (1979) 440 U.S. 625 ...................................................................................... 12, 14

*Cnty. of Madera v. Gendron*,
  (1963) 59 Cal. 2d 798 ................................................................................... 11, 12

*Cook v. Craig*,
  (1976) 55 Cal.App.3d 773 ............................................................................ 12, 16

*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga*,
  (2000) 82 Cal.App.4th 473 .................................................................................. 16

*E. Bay Mun. Util. Dist. v. Cal. Dept. of Forestry & Fire Prot.*,
  (1996) 43 Cal.App.4th 1113 ................................................................................ 16

*Eye Dog Found. v. State Bd. of Guide Dogs for the Blind*,
  (1967) 67 Cal.2d 536 ..................................................................................... 11, 12

*Fletcher v. W. Natl. Life Ins. Co.*,
  (1970) 10 Cal.App.3d 376 .................................................................................. 15

*Grier v. Alameda-Contra Costa Transit Dist.*,
  (1976) 55 Cal.App.3d 325 .................................................................................. 16

*Liberty Mut. Ins. Co. v. Fales*,
  (1973) 8 Cal.3d 712 ...................................................................................... 11, 12

*Marin Cnty. Bd. of Realtors, Inc. v. Palsson*,
  (1976) 16 Cal.3d 920 ...................................................................... 12, 14, 15

*Preminger v. Principi*,
  (9th Cir. 2005) 422 F.3d 815 ............................................................................... 11

*Roger v. Cnty. of Riverside*,
  (2020) 44 Cal.App.5th 510 ................................................................................. 11

*United States v. Ins. Bd. of Cleveland*,
  (N.D. Ohio 1956) 144 F.Supp. 684 ..................................................................... 14

**Statutes**

Code Civ. Proc., § 1021.5 .................................................................................................. 11

Evid. Code, § 1152 ............................................................................................................ 15

Pen. Code, § 643a ............................................................................................................. 12

Pen. Code, § 643.5 ............................................................................................................ 12

Pen. Code, § 16350 ............................................................................................................. 9

Pen. Code, § 17090 ............................................................................................................. 9

Pen. Code, § 17190 ............................................................................................................. 9

Pen. Code, § 28205 ......................................................................................................... 6, 7

Pen. Code, § 30900 ............................................................................................................. 9

Welf. & Inst. Code, § 13000 ............................................................................................. 12

**INTRODUCTION**

Having dragged its feet by refusing to fix the issues with the DROS Entry System (DES) that Petitioners identified over two years ago, the DOJ finally added an "Other" option to the DES in October 2021. Now, the DOJ seeks to use its belated action to have Petitioners' First, Second, and Eighth Causes of Action dismissed as moot. Petitioners do not inherently disagree with the dismissal of those claims. They just asked for some reasonable assurance that the DOJ would not reinstate a policy of blocking the lawful transfer of legal firearms if they agreed to voluntarily dismiss their claims. To that end, Petitioners proposed, among other things, entering a settlement agreement that would prevent such an outcome. The DOJ agreed to consider settlement language to that effect, but then never responded in substance to the terms Petitioners proposed—even though Petitioners sought only a commitment that the DOJ would not resume a policy of blocking the transfer of firearms legal to transfer and possess in California at the time of the transfer. Instead, the DOJ moved to dismiss the claims as moot.

While Petitioners concede that mootness is typically a bar to justiciability, the Court has inherent authority to hear moot claims if the dispute involves an issue of broad public interest likely to recur or is likely to recur between the same parties. Both apply here. The DOJ's voluntary cessation of its policy blocking the lawful transfer of lawful firearms, as well as its refusal to provide any sort of assurance that it will not reinstate such a policy after these claims are dismissed, suggest strongly that the dispute is reasonably likely to recur. And the Petitioners' claims directly implicate the broad public interest in vindicating fundamental, constitutional rights, and their interest in ensuring that the state's unelected regulatory bodies do not exceed their delegated authority through illegal underground regulations. But even if such critical issues of public interest were not involved, Petitioners would immediately file suit again if the DOJ resumed the conduct challenged here, making it very likely that, if these issues recur, the dispute would be between the same parties.

Petitioners remain willing to negotiate a settlement addressing Petitioners' serious concerns about the DOJ's commitment not to resume the allegedly unlawful policy challenged in this lawsuit. Should such a settlement be reached before the hearing, Petitioners would drop their opposition to the DOJ's motion to dismiss the First, Second, and Eighth Causes of Action. But failing that, the Court should deny the motion.

**STATEMENT OF FACTS**

California has reserved the entire field of licensing and registration of firearms to itself. (Second Am. Compl. ("SAC"), ¶ 34, citing Pen. Code, § 53071.) Under state law, "every dealer shall keep a register or record of electronic or telephonic transfer in which shall be entered" certain information relating to the transfer of firearms. (SAC, ¶ 43.1, quoting Pen. Code, § 28100.) "For all firearms," this record, called the Dealer Record of Sale (DROS), must the include the "type of firearm." (SAC, ¶ 44.14, quoting Pen Code, § 28160.) Under section 28205, a DROS must be submitted to the DOJ electronically, "except as permitted by the [DOJ]." (SAC, ¶ 52.) State law also mandates that "[t]he [DOJ] shall prescribe the *form* of the register and the record of electronic transfer pursuant to Section 28105." (SAC, ¶ 43.2, quoting Pen. Code, § 28155, italics added.) The method established by the DOJ for submitting purchaser information required by section 28160, subdivision (a), is known as the DROS Entry System (DES). (SAC, ¶ 53.) The DES is a web-based application designed, developed, and maintained by the DOJ and used by firearm dealers to transmit to the DOJ the information required for each firearm transfer. (SAC, ¶ 54; Decl. of Maricela Leyva Supp. Resps.' Mot. to Dismiss ("Leyva Decl."), ¶ 3.)

As designed, the DES facilitates the transfer of certain firearms, including "handguns" (also called "pistols" or "revolvers") and "long guns" (including "rifles," "shotguns," and "rifle/shotgun combinations." Many firearms, however, do not qualify as "handguns," "pistols," "revolvers," "rifles," or "shotguns," as those terms are defined by statute, or as "rifle/shotgun combinations." (SAC, ¶¶ 22-26.)[1] But, before October 1, 2021, the DES dropdown menu for "subtype" that populates when one selects "long gun" as the "gun type" included no option for these undefined firearm subtypes. (SAC, ¶ 58.) Dealers could thus not accurately submit the required information for these firearms through the DES. (SAC, ¶ 59.) Consequently, they could not process and accept applications from purchasers of undefined firearm subtypes. (SAC, ¶¶ 58-59, 62.) What's more, the DOJ refused to offer any alternative means for transmitting the required information, even though section 28205, subdivision (c), authorizes it to do so. (SAC, ¶ 60.) Through these administrative and technological barriers then, the DOJ instituted and maintained a policy prohibiting the transfer of otherwise lawful firearms that are "long guns" but are not

---

[1] Firearms that are not "handguns," "pistols," "revolvers," "rifles," or "shotguns" (or "frames" or

6
PLS.' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

"rifles," "shotguns," or "rifle/shotgun combinations" through a licensed retailer. (SAC, ¶ 63.)

Franklin Armory, Inc., manufactures a series of firearms that are neither "handguns," nor "rifles," nor "shotguns," and which are designated with the model name "Title 1." It could not, however transfer its Title 1 firearms because of DOJ's policy blocking the lawful transfer of undefined firearm subtypes. (SAC, ¶¶ 2, 57-63.) California Rifle and Pistol Association, Incorporated (CRPA) is a nonprofit organization whose members wish to purchase or transfer undefined firearm subtypes, including Title 1 firearms, buntlines, butterfly grip firearms, and barreled action firearms without stocks, but could not complete or submit their applications for the lawful transfer of said firearms because of the DOJ's alleged policy barring such transfers. (SAC, ¶¶ 6, 79, 99-102.)

The DOJ has long known about this deficiency but, for years, refused requests to correct it. (SAC, ¶ 67.) Indeed, Franklin Armory informed the DOJ in writing of the defect and the resulting inability to transfer Title 1 firearms in October 2019. (SAC, ¶¶ 68-69 & Ex. C.) Franklin Armory followed that letter with a detailed government tort claim. (SAC, ¶ 74.) The tort claim was rejected, and the DOJ made no public efforts to correct the alleged deficiencies of the DES or authorize other ways to effectuate the transfers. (SAC, ¶¶ 75-76.) Instead, the DOJ sponsored a bill making the centerfire Title 1 an "assault weapon." (SAC, ¶¶ 108-114.) Petitioners thus sued, alleging several causes of action, including a petition for writ of mandate directing the DOJ to correct the administrative and technological defects that bar the lawful transfer of undefined firearm subtypes or authorize other ways to transmit the required information pursuant to its authority under section 28205. (Compl., ¶¶ 123-129.) Petitioners soon filed a First Amended Complaint, adding four claims—some related to changes in state law affecting their claims. (First Am. Compl., ¶¶ 163-202.) The Court stayed all but the First, Second, and Eighth Causes of Action. (Tr. Setting Conf. Order, Oct. 15, 2020.)

The DOJ then demurred to the unstayed claims. In a decision sustaining the demurrer, the Court ruled that Petitioners could not succeed on their claims—at least as related the transfer of *centerfire* Title 1 firearms for which deposits had been made. (Decision on Dem., Jan. 28, 2021, p. 9.) The Court held that, because the deadline by which to take possession of such firearms to register them as "assault

---

"receivers" for such firearms) are called "undefined firearm subtypes" throughout this brief.

weapons" passed in September 2020, the Court lacks authority to direct the DOJ to facilitate the transfer of such firearms, rendering the case both moot and unripe, and leaving Petitioners without standing to pursue their claims. (*Id.* at pp. 5-8.) Satisfied, however, that Petitioners could allege that Franklin Armory manufactures rimfire Title 1 firearms that are not "assault weapons" and that CRPA represents the interests of members who wish to purchase lawful undefined firearm subtypes, the Court granted Petitioners leave to amend. (Hrg. Tr., Jan. 28, 2021, p. 8:21.)

Petitioners thus filed a Second Amended Complaint (SAC) alleging that countless firearms, including the rimfire Title 1, buntlines over 16 inches, butterfly grip firearms, and barreled action firearms without a stock, remain legal but cannot be transferred under the DOJ's policy of barring the transfer of undefined firearm subtypes. (SAC, ¶¶ 27-32, 57-63.) The SAC also clarified the basis of Petitioners' declaratory relief claims, as well as their APA claim. (SAC, ¶¶ 115-120, 185-197.) The DOJ brought yet another demurrer, which the Court overruled.

Just a few weeks later, the DOJ allegedly began a 50-day process of correcting the DES to include the option to select "Other" from the dropdown menu that populates when one selects "long gun" as the gun type. (Barvir Decl. Supp. Petrs.' Oppn. to Mot. to Dismiss ("Barvir Decl."), Ex. 5 at pp. 31-32, Ex. 6 at p. 38.) The DOJ did not, however, inform Petitioners that it had begun these efforts until September 15, 2021, when DOJ attorneys informed Petitioners' counsel by email that the DOJ had "been working on a modification of the DES to add an 'Other' option to the 'gun type' menu." (*Id.*, ¶ 2 & Ex. 1 at p. 10.) The email did not otherwise specify what the change to the DES would look like or when it would be made public. (*Ibid.*) Even so, the DOJ declared that the First, Second, and Eighth Causes of Action were moot, and requested a conference to discuss dismissal of those claims. (*Ibid.*) The parties thus met on September 21, to discuss the effect of the anticipated DES change on this lawsuit. (*Id.*, ¶ 3.) During the call, Petitioners understandably hesitated to dismiss their claims because the DOJ's attorneys did not, at that time, have any further details about the DES modification (*Ibid.*) So the parties agreed to meet again to explore the possibility of dismissal once more was known. (*Ibid.*)

On September 27, 2021, the DOJ issued a bulletin notifying DES users that, beginning on October 1, 2021, they could select "Other" from among the "long gun" subtypes listed in the DES. (Leyva Decl., ¶¶ 5-6 & Ex. A at p. 1.) Under the heading "What Is Considered an 'Other' Firearm," the

bulletin defined "[a]n 'Other' type firearm [as] a firearm that does not meet the definition of a rifle (Pen. Code § 17090), shotgun (Pen. Code § 17190), or pistol (Pen. Code § 16350)." (*Id.*, Ex. A at p. 1.) The bulletin then advised dealers that "[p]rior to the sale, loan, or transfer of an 'Other' type firearm [they] *must* confirm" two things: (1) that the "Other" firearm "has a fixed magazine of ten rounds or fewer"; and (2) that it "has an overall length of 30 inches or more." (*Ibid.*, italics added.) It also warned dealers that "[i]f the 'Other' does not meet the criteria above or is considered an 'Other' Assault Weapon pursuant to Penal Code 30900,[2] **the 'Other' may not be sold, loaned or transferred** in the DES." (*Ibid.*, double emphasis original.) But there are countless "Other" firearms that are lawful to transfer and possess in California even though they do not meet both criteria and are not " 'Other' Assault Weapons" under section 30900. (Barvir Decl., ¶ 5.) This includes many firearms identified in the operative complaint (e.g., rimfire Title 1 firearms, buntline revolvers, and barreled actions without a stock). (*Ibid.*; see SAC, ¶¶ 6, 79, 99-102.)

When counsel for the parties met on September 28th, Petitioners expressed their concerns that, as drafted, the bulletin advised firearms dealers that the very "Other" firearms at issue in this lawsuit "**may not be sold, loaned or transferred** in the DES." (Levya Decl., Ex. A at p. 1, double emphasis original; Barvir Decl., ¶¶ 5-6.) Petitioners thus reasoned that the claims were not moot and declined the DOJ's request to voluntarily dismiss those claims. (Barvir Decl., ¶ 6.) The DOJ responded by issuing another bulletin—expressly superseding the September 27 bulletin—just two days later. (Leyva Decl., ¶ 9 & Ex. B; Barvir Decl., ¶ 7.) The second bulletin replaced the guidance about "What Is Considered an 'Other' Firearm" with the following:

> An "Other" type firearm is a firearm that does not meet the definition of a rifle (Pen. Code, § 17090), shotgun (Pen. Code, § 17190), or pistol (Pen. Code, § 16350.) Firearms that might be eligible for DROS at this time would include serialized receivers, barreled actions (that lack a stock), "Buntline" type firearms with revolving cylinders, firearms that fire shotgun shells that also lack a stock (commonly known as Pistol Grip shotguns).

(Leyva Decl., Ex. B at p. 1.) The September 30 bulletin did not instruct firearm dealers that they must confirm that the "Other" firearm has a fixed magazine of 10 rounds or fewer and that it is longer than 30

---

[2] The bulletin later defines an "Other" assault weapon in a separate section entitled "What Is

1  inches total. (*Ibid.*) And gone was the warning that firearms that do meet those criteria cannot be
2  transferred in the DES. (*Ibid.*) Instead, it simply said: "Note: Prior to the sale, loan, or transfer of a
3  centerfire "Other" type firearm, you must confirm the "Other" does not meet the criteria of an "Other"
4  Assault Weapon pursuant to Penal Code 30515." (*Ibid.*) When the "Other" option became available, this
5  was the DOJ guidance in place. The DOJ would, however, later issue a third bulletin about the sale of
6  "Other" firearms, superseding the first two bulletins. (Barvir Decl., ¶ 8 & Ex. 2.)[3]

7        On October 29, 2021, counsel for the DOJ requested a meet-and-confer to discuss the DOJ's
8  anticipated motion to dismiss, reaching out to discuss the potential mootness of Petitioners' claims for
9  the first time since the September 30 bulletin was issued. (Barvir Decl., ¶ 9 & Ex. 3 at p. 19.) During
10  that conference, Petitioners repeatedly offered to dismiss the First, Second, and Eighth claims if the DOJ
11  offered some assurance that it would not resume blocking lawful transfers of undefined firearm
12  subtypes. (*Id.*, ¶ 10.) To that end, Petitioners proposed that the parties agree to a stipulated judgment,
13  consent decree, or settlement. (*Ibid.*) The DOJ rejected the first two out of hand but agreed to consider
14  proposed settlement language. (*Ibid.*) Petitioners thus sent a proposed agreement to the DOJ for review.
15  (*Id.*, ¶¶ 10-11.) And at the DOJ's request, they provided caselaw explaining that when a dispute
16  involving an issue of public interest is likely to recur, courts may exercise their inherent discretion to
17  hear claims that might otherwise be moot. (*Ibid.*) Counsel for the DOJ asked for clarification on some of
18  the proposed terms, but neither rejected Petitioners' proposal nor offered any alternative language. (*Id.*, ¶
19  12.) Instead, the DOJ filed this motion to dismiss. (*Ibid.*)

20  <center>**ARGUMENT**</center>

21  **I.   THE COURT SHOULD EXERCISE ITS DISCRETION TO HEAR THE FIRST, SECOND, AND EIGHTH
22  CAUSES OF ACTION BECAUSE THEY INVOLVE A DISPUTE OVER ISSUES OF BROAD PUBLIC
    INTEREST THAT ARE LIKELY TO RECUR**

23        The DOJ contends that the Court should exercise its inherent authority to dismiss Petitioners'
24  First, Second, and Eighth Causes of Action as moot because it voluntarily updated the DES to include an
25  "Other" option allowing firearms dealers to process transactions for undefined firearm subtypes. (Mot.,
26  pp. 12-19.) But even if the matter has been mooted by the modification to the DES, that is not the end of

27  ―――――――――――――――
28  Considered an 'Other' Assault Weapon." (Leyva Decl., Ex. A at p. 1.)

the inquiry. To the contrary, California courts may consider an otherwise moot claim "[i]f an action [1] involves a matter of continuing public interest and [2] the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (*Liberty Mut. Ins. Co. v. Fales* (1973) 8 Cal.3d 712, 715-716 (*Liberty Mut.*).) This rule applies to both declaratory relief actions (*ibid.*) and petitions for writ of mandamus (*Roger v. Cnty. of Riverside* (2020) 44 Cal.App.5th 510, 529-530). This case easily meets this standard.

### A. The Dispute Involves Issues of Broad Public Interest

While the caselaw about what constitutes a matter of public interest in this context provides no hard-and-fast rules, other areas of the law provide some helpful guidance. For instance, in the context of California's private attorney general statute (Code Civ. Proc., § 1021.5), court have long held that "[l]itigation which enforces constitutional rights *necessarily affects the public interest* and confers a significant benefit upon the general public." (*City of Fresno v. Press Commcns., Inc.* (1994) 31 Cal.App.4th 32, 44, italics added.)[4] But of course, whether an issue is one of public interest is not limited to constitutional questions. Courts have found a broad public interest to exist when the dispute involves a claim of declaratory relief regarding the challenged acts of government officials if a decision will affect the official's successors and similarly situated officials. (*Cnty. of Madera v. Gendron*, 59 Cal. 2d 798, 804 (1963) [holding that a dispute over whether the county could withhold a D.A.'s salary for failure to conform with a law barring private practice was not moot even though the D.A. lost reelection because "the instant question affects the defendant's successors in office as well as the district attorneys of other counties"].) And they have likewise found a broad public interest in cases touching upon the rights and interests of a large population of people not party to the case. (See, e.g., *Eye Dog Found. v. State Bd. of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 (*Eye Dog*) [observing that the case involved not only the interests of the parties, but also the interests of the state's blind population].)

There can be no doubt that the relevant claims involve matters of broad public interest. Indeed, it

---

[3] This bulletin made further changes to the guidance not relevant here. (Barvir Decl., ¶ 8.)
[4] Similarly, under the federal preliminary injunction standard, which requires a showing that temporary relief is in the public interest, courts have long recognized that "*all citizens* have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." (*Preminger v. Principi* (9th Cir. 2005) 422 F.3d 815, 826, italics added.)

directly implicates the public's fundamental interest in protecting and vindicating the constitutional right the right to acquire and possess lawful firearms. (See, e.g., SAC, ¶¶ 116-122, 124-127, 186-187.) It also involves the public interest in ensuring that the state's regulatory bodies do not exceed their delegated authority through underground regulations in violation of the Administrative Procedure Act. (See, e.g., SAC, ¶¶ 186-197.) This case also seeks a declaration about the legality of conduct by the Attorney General and the DOJ that will not only direct the conduct of those currently serving, but of their successors in office. (See *Cnty. of Madera v. Gendron*, *supra*, 59 Cal. 2d at p. 804.) And this dispute concerns the interests of both the named parties, as well the thousands of firearm purchasers, dealers, and manufacturers seeking to transfer firearms in California. (See *Eye Dog*, *supra*, 67 Cal.2d at p. 542.) What's more, the case arguably even involves *the state's* interest in ensuring that its statutorily created systems for registering and tracking lawful firearm sales are operating correctly. (Cf., *Eye Dog*, *supra*, 67 Cal.2d at p. 542 [holding that "by the enactment of legislation favoring the blind (Welf. & Inst. Code, § 13000 et seq; Pen. Code, §§ 643a, 643.5), the Legislature has impliedly made their welfare a matter of continued public interest"].) That interest, in turn, affects the important interest in public safety and making sure that, as the law requires, firearm transactions are properly documented.

### B. The Dispute Involves Issues That Are Likely to Recur

The next step of the inquiry asks whether "the issue is likely to recur." (*Liberty Mut.*, *supra*, 8 Cal.3d at pp. 715-716.) What constitutes a likelihood of recurrence is a fact-specific inquiry that might consider any number of circumstances, including whether the cessation of the challenged conduct was voluntary, whether there is some assurance that the conduct will not be resumed, and whether the party that changed its behavior has adopted a position that it was not required to. (See, e.g., *Marin Cnty. Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920, 929 (*Marin Cnty. Bd. of Realtors*); *Cnty. of Los Angeles v. Davis* (1979) 440 U.S. 625, 631; *Cook v. Craig* (1976) 55 Cal.App.3d 773, 780 (*Cook*).) So even though the DOJ modified the DES to facilitate the lawful transfer of undefined firearm subtypes (for now), the dispute is reasonably likely to recur because the DOJ voluntarily ended the illegal policy blocking the lawful transfer of such firearms, it has several readily available tools to reinstate the policy on its own volition, and it refuses to agree *not* to do so.

Recall, the DOJ voluntarily began the process of adding the "Other" option to the DES in July

2021 (Barvir Decl., Ex. 6 at p. 38)—over a year since this case was first filed and nearly two years since Franklin Armory notified the DOJ of its concerns in writing (SAC, ¶¶ 68-69 & Ex. C). Moreover, the DOJ has repeatedly refused to acknowledge that it lacks authority to block the lawful transfer of otherwise legal firearms. It even argued in its latest demurrer that the Penal Code does not impose any duty to modify the DES to allow for the transfer of undefined subtype firearms. (DOJ's Mem. Supp. Demurrer to 2d Am. Compl. & Petit., pp. 16-17.) Without an order from this Court, the DOJ could just as easily reinstate the administrative and technological barriers that Petitioners challenge here. And the DOJ has several options for doing just that. For instance, it could simply modify the DES again, removing the "Other" option altogether. Indeed, deploying the changes to the DES took only a couple of months at most (Barvir Decl., Ex. 5 at pp. 31-32, Ex. 6 at p. 38), and it is very plausible that undoing such changes would be even quicker.

Alternatively, the DOJ could issue a fourth (or fifth or sixth) bulletin that operates to block the transfer of undefined firearm subtypes (or any lawful firearm, for that matter) through the DES. There appears to be nothing preventing the DOJ—aside from its own judgment—from issuing a bulletin telling firearm dealers that they cannot use the "Other" option at all despite its availability. Or it could redefine (*yet again*) what constitutes an "Other" firearm that may be transferred in the DES, warning dealers not to use the option for any firearm that fails to meet the new criteria. Given how quickly the DOJ can deploy these bulletins, such a concern is hardly far-fetched. Indeed, it only took two days for the DOJ to issue a second bulletin redefining what it considers an "Other" firearm that can be legally transferred in the DES.[5] But even if the September 30 bulletin were drafted and released unusually fast, a DOJ employee verified that drafting and issuing bulletins of this nature takes just 7-10 days on average.

---

[5] The DOJ suggests it only intended the second bulletin to clarify, but not change, what constitutes an "Other" firearm that may be transferred in the DES because it merely specified that only centerfire firearms can be "Other" assault weapons that cannot be. (Levya Decl., ¶¶ 7-9; Mot., pp. 14-15.) The DOJ is, however, less than forthcoming about the extent of the changes it made. (See *supra*, pp. 7-10 [discussing the various changes in detail].) But even if it had merely slipped in a reference to "centerfire" firearms, that addition alone changes the class of "Other" firearms that cannot be legally transferred in the DES from including both assault weapons *and* legal firearms that are not assault weapons, to including only assault weapons. (See Levya Decl., ¶¶ 8-9.) Regardless of the drafters' intent, the meaning of the second bulletin differed dramatically from the first. So even if the second bulletin merely corrected an inadvertent omission that only incidentally changed the meaning of "Other" as the DOJ claims (*id.*, ¶¶

(Barvir Decl., Ex. 7 at p. 44.) She also testified that "[i]f it's deemed necessary, [the DOJ Bureau of Firearms] can *always* release bulletins." (*Id.*, Ex. 7 at p. 47.) The record thus shows just how easily the DOJ could again restrict the lawful transfer of undefined firearm subtypes. Petitioners should not have their claims mooted, only for the DOJ to turn around and re-erect the administrative and technological barriers to the lawful transfer of undefined firearm subtypes.

To be sure, that a dispute *can* recur does not necessarily mean it is "likely" to. But this Court need not definitively decide that the DOJ will reinstate the policy challenged here because the DOJ has provided no assurances that it will not. That fact tips sharply in favor of finding a reasonable likelihood of recurrence. Our Supreme Court confirmed as much when it held, in *Marin County Board of Realtors*, that the voluntary end of an allegedly unlawful practice, with "*no assurance that the [actor] will not [resume] it in the future*," " 'does not remove the pending charges of illegality from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges *where by the mere volition of a party the challenged practices may be resumed*.' " (16 Cal.3d at p. 929, italics added, quoting *United States v. Ins. Bd. of Cleveland* (N.D. Ohio 1956) 144 F.Supp. 684, 691; see also *Cnty. of Los Angeles v. Davis*, *supra*, 440 U.S. at p. 631 [holding that "voluntariness of the cessation is relevant to the issue of the likelihood of recurrence, *i.e., the likelihood is increased if the cessation of conduct was merely a voluntary choice by the defendant and the defendant remains free to change its position at will*," italics added].)

The DOJ's motion does not address whether the dispute is likely to recur, even though the DOJ knew the Petitioners would make this very argument. Indeed, at the DOJ's request, Petitioners provided counsel with caselaw supporting their position before the DOJ filed this motion. (Barvir Decl., ¶¶ 10-11, Ex. 3.) Rather than address those authorities, the DOJ pretends that Petitioners' only concern was with the issuance of another bulletin superseding the September 27 bulletin. (Mot., at p. 14:16-21, and discussed further *infra*.) But Petitioners' principal concern here is not simply with the DOJ's serial issuance of bulletins affecting the use of the "Other" option to process the transfer of undefined firearm subtypes in the DES—though that is certainly relevant as discussed above. Rather, like the Court in

---

7-9), it is of no consequence. The DOJ has shown that, at a moment's notice, it can issue new guidance

*Marin County Board of Realtors*, Petitioners object to the DOJ's refusal to give any reasonable assurance that, having *voluntarily* ended the allegedly unlawful practice, it will not simply reverse course once again and resume blocking the lawful transfer of undefined firearm subtypes. If they had offered such assurance, Petitioners would likely have no misgiving about voluntarily dismissing their claims as moot. Indeed, Petitioners requested assurances from the DOJ and expressly agreed to dismiss the First, Second, and Eighth claims had they received it.

      In trying to avoid the time and expense of litigating this motion, Petitioners met and conferred with the DOJ in early November and proposed three ways to resolve the First, Second, and Eighth Causes of Action short of further motions practice. Petitioners proposed that the parties enter a stipulated judgment, a consent decree, or a settlement agreement—any one of which would provide some assurance that the DOJ it would not simply reinstate the challenged policy. (Barvir Decl., ¶ 10.) Counsel for the DOJ agreed to consider only settlement, so Petitioners drafted and sent a proposed agreement for their consideration. (*Id.*, ¶¶ 10-11.) As consideration for voluntarily dismissing their claims, Petitioners' sought only an agreement that DOJ would not resume a policy of blocking the transfer of firearms transfer and possess in California at the time of the transfer. (Barvir Decl., Ex. 4 at p. 24.) What's more, the proposal expressly stipulated that the agreement did not "revoke the [DOJ's] authority to evaluate, consider, propose, adopt, and implement changes to its policies, procedures, and regulations, including the maintenance of the DES, as long as those changes are consistent with state and federal law." (*Ibid.*) Nor did Petitioners request the payment of damages, fees, or costs as a condition of settlement. In short, Petitioners asked the DOJ to agree to a settlement that simply requires it to follow the law going forward.[6] Yet the DOJ did not even attempt to negotiate over what terms they might be amenable to. (*Id.*, ¶ 12.) That the DOJ has refused to offer any assurance that it will not reinstate the allegedly unlawful policy that it voluntarily ended, via settlement or otherwise, is sufficient for this Court to

---

changing what it considers an "Other" firearm that can be legally transferred in the DES.

[6] The State may protest that these negotiations are confidential. But the Evidence Code only forbids the admissibility of settlement communications to prove liability. (Evid. Code, § 1152, subd. (a); see also *Fletcher v. W. Natl. Life Ins. Co.* (1970) 10 Cal.App.3d 376, 396 ["Plaintiff, however, did not offer the letter to prove liability under the policy but, rather, as a part of his proof of the instrumentality of the tort. Section 1152, therefore, did not preclude its admission"].) The proposed settlement language and related

exercise its discretion to decide Petitioners' claims even if they are moot. But there is more.

Despite its voluntary change to the DES to facilitate the transfer of the firearms at issue, the DOJ has steadfastly maintained throughout this litigation that it is under no duty to do so. Nor has the DOJ ever conceded it was wrong to block the transfer of lawful firearms in the first place. Quite the opposite, actually. The DOJ filed two demurrers arguing otherwise, and only began work to fix the DES in mid-July 2021, *well after Petitioners sued*. (Barvir Decl., Ex. 5 at pp. 31-32; *id.*, Ex. 6 at p. 38.) This too is evidence of that the dispute is likely to recur. (See *Cook v. Craig* (1976) 55 Cal.App.3d 773, 780 ["As to future revisions of the procedures, it is apparent that defendant's unilateral decision to disclose . . . is also unilaterally rescindable. Given the position of defendant that it has no legal obligation to disclose these procedures, and its voluntary disclosure only after litigation was commenced, we cannot say that the dispute will not recur."]; see also *E. Bay Mun. Util. Dist. v. Cal. Dept. of Forestry & Fire Prot.* (1996) 43 Cal.App.4th 1113, 1132 [agreeing with *Cook* that where an agency takes a stance that it was not obligated to comply, despite its decision to voluntarily do so, a court may "reasonably conclude that the issue was likely to recur"].)

In other words, the DOJ's position conflicts with the idea that it regrets the conduct challenged here and commits not to engage in it again. It is thus reasonably likely the DOJ will resume that conduct, and so these issues are not moot. But even if they are, the Court may still exercise its discretion to decide Petitioners' claims because this dispute involves issues of broad public interest that are likely to recur.

II. **THE COURT MAY ALSO EXERCISE ITS DISCRETION TO HEAR THE FIRST, SECOND, AND EIGHTH CAUSES OF ACTION BECAUSE THEY INVOLVE A DISPUTE LIKELY TO RECUR BETWEEN THE SAME PARTIES**

Petitioners believe this case involves issues of tremendous public importance. But even if this Court disagrees, it may still hear this case because it involves a dispute likely to recur *between the same parties*. Indeed, the requirement that the matter be of public interest evaporates when there may be a recurrence of the controversy between the same parties. (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480, citing *Grier v. Alameda-Contra Costa Transit Dist.* (1976) 55 Cal.App.3d 325, 330.) Here, there is no doubt of that. As discussed above,

---

emails are not presented here to establish liability. Instead, they are being submitted to show that the DOJ

there is a reasonable likelihood that this dispute will recur, despite the DOJ's voluntary cessation of the allegedly unlawful policy. (See *supra*, pp. 12-16.) If the DOJ resumes unlawfully blocking the transfer of undefined firearm subtypes, Petitioners will not hesitate to bring another lawsuit against the DOJ and Attorney General challenging that action.

That these issues are likely to recur between Petitioners and the DOJ is apparent from the DOJ's conduct here, including its motion to dismiss. Even though the DOJ refused to enter a settlement agreement giving Petitioners confidence that the DOJ would not resume blocking the transfer of undefined firearm subtypes, it could have at least stated clearly in its brief that it would not.[7] Instead, the DOJ spends its brief pedantically limiting the scope of Petitioners' complaint in unreasonable ways. For instance, it argues that "the Court should reject any argument Petitioners make that their claims are not moot because the DOJ could in the future issue notices or bulletins" because the "Second Amended Complaint and Petition does not include any allegations regarding notices or bulletins issued by the DOJ, and thus any relief involving notices or bulletins would be beyond the scope of Petitioners' claims." (Mot., at p. 18:13-20.) This is a misleading point that tries to defeat the SAC on a technicality.

In the first place, it is unsurprising that the SAC does not expressly mention the DOJ's abuse of bulletins to advance its policy of blocking the lawful transfer of undefined firearm subtypes. For the DOJ had issued no bulletin relevant to this action until September 27, 2021, months after the operative complaint was filed. Even so, the SAC expressly seeks a declaration that the DES "as designed, implemented, maintained *and/or enforced*" (SAC, at Prayer for Relief, ¶ 6.), is not in compliance with the relevant laws. Bulletins about the use of the "Other" option are tools for enforcing the DES by the DOJ, as they instruct firearms dealers on the lawful use of the system. Similarly, the complaint seeks equitable relief enjoining the DOJ from enforcing "*administrative* and/or technological barriers that prevent or otherwise inhibit the sale" of the firearms at issue. (SAC, at Prayer for Relief, ¶¶ 7-8.) The bulletins are exactly such an administrative barrier, if abused by the DOJ.

---

rebuffed Petitioners' request for some assurance that it would not reinstate the challenged policy.
   [7] This Court should not take seriously any Eleventh-Hour attempts by the DOJ to make such assurances in its reply briefing. Not only would raising such arguments on reply be a classic example of "sandbagging" (*Cal. Sportfishing Prot. All. v. Pac. States Indus., Inc.* (N.D. Cal. Sept. 22, 2015) No. 15-

Whether the DOJ blocks the transfer of undefined firearm subtypes through a DES technicality, or a bulletin directing dealers to use the "Other" option to process the transfer of undefined firearm subtypes, or any other method, the effect is the same. And Petitioners seek to enjoin the DOJ "from enforcing administrative and/or technological barriers that prevent or otherwise inhibit the sale, loan and/or transfer of lawful 'firearms with an undefined subtype.' " (*Ibid.*) That request is in no way limited to just the technical functionality of the DES. No matter how much the DOJ may wish this case was solely about the DES, and tries to gaslight Petitioners to that effect, the Petitioners have always been clear that what they seek to end is the DOJ's illegal policy of blocking the transfer of lawful firearms. That the DOJ is so concerned with limiting the Petitioners' complaint to the DES to the exclusion of any other method the DOJ might use to block the sale of the lawful firearms at issue is strong indication that these issues are likely to recur between the same parties. This Court can thus continue to hear the First, Second, and Eighth Causes of Action.

## CONCLUSION

For these reasons, the Court should exercise its inherent discretion to decide claims that might otherwise be moot and deny the DOJ's motion to dismiss.

Date: January 13, 2022

MICHEL & ASSOCIATES, P.C.

/s/ Anna Barvir

Anna M. Barvir
Attorneys for Petitioners-Plaintiffs

---

cv-01482, 2015 WL 5569073, at *2), any such assurance would carry no legal weight and would be as if no assurance had been made at all.

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

      I, Laura Palmerin, am employed in the City of Long Beach, Los Angeles County, California. I am over the age eighteen (18) years and am not a party to the within action. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

      On January 13, 2022, I served the foregoing document(s) described as

**PLAINTIFFS AND PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS THE FIRST, SECOND, AND EIGHTH CAUSES OF ACTION IN THE SECOND AMENDED COMPLAINT**

on the interested parties in this action by placing
    [X] the original
    [ ] a true and correct copy
thereof by the following means, addressed as follows:

Benjamin Barnouw
Supervising Deputy Attorney General
Email: ben.barnouw@doj.ca.gov
Kenneth G. Lake
Deputy Attorney General
Email: kenneth.lake@doj.ca.gov
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
   *Attorney for Respondents-Defendants*

  X  (BY ELECTRONIC MAIL) As follows: I served a true and correct copy by electronic transmission. Said transmission was reported and completed without error.

  X  (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 13, 2022, at Long Beach, California.

                              */s/ Laura Palmerin*
                              Laura Palmerin