O

# United States District Court
## Central District of California

| | |
|---|---|
| ENDIR BRISENO, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROBERT A. BONTA, et al.,<br><br>        Defendants. | Case № 2:21-cv-09018-ODW (PDx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR STAY [23]** |

## I.  INTRODUCTION

On November 17, 2021, Plaintiffs Endir Briseno, Neil Opdahl-Lopez, and Rodney Wilson initiated this action individually and as a putative class against California Attorney General Robert A. Bonta and the California Department of Justice ("DOJ") for violations of Plaintiffs' constitutional rights arising from Plaintiffs' thwarted efforts to obtain certain Title 1 firearms. (Compl., ECF No. 1.) Defendants move to dismiss Plaintiffs' Complaint or stay the action. (Mot. Dismiss or Stay ("Motion" or "Mot."), ECF No. 23.) Defendants assert the Court should dismiss the Complaint for failure to state a claim and lack of Article III standing, and alternatively assert the Court should stay the case under the *Pullman* abstention doctrine and the *Colorado River* doctrine. (*Id.* at 1.)  For the reasons discussed below, the Court

**GRANTS** the Motion **IN PART** and **DENIES** the Motion **IN PART**, and stays the case pursuant to the *Pullman* abstention doctrine.[1]

## II.     FACTUAL BACKGROUND

As alleged in the operative Complaint, this action arises from the California DOJ maintaining and enforcing a practice, or "non-statutory rule," that prevented California residents from buying lawful firearms. (First Amended Complaint ("FAC") ¶ 30, ECF No. 21.) On or before August 6, 2020, Briseno and other class members paid a deposit and contracted with nonparty Franklin Armory to purchase Title 1 firearms.[2] (*Id.* ¶ 55.) Pursuant to California law, Franklin Armory cannot sell firearms directly to consumers. (*See id.* ¶ 73.) Instead, a separate dealer who is licensed by the federal government, the State of California, and local authorities must first register the gun to the DOJ's Record of Sale Entry System ("DES") using an online form. (*Id.*) The gravamen of Plaintiffs' Complaint is that the DOJ prevented Plaintiffs from purchasing and taking possession of Title 1 firearms by making it impossible for dealers to register Title 1 firearms on DES. (*Id.* ¶¶ 96–133.)

California law divides guns into two types: "handguns" and "long guns," (*id.* ¶ 46), and further subdivides long guns into two subtypes: "rifles" and "shotguns," (*Id.* ¶ 50). Title 1 firearms are long guns with an undefined subtype and are neither rifles nor shotguns. (*Id.* ¶¶ 54–64). To register a gun on DES, dealers must indicate both the type and sub-type of gun being registered by making selections from drop-down menus on the DES's online form. Dealers registering long guns on DES encountered a dropdown menu for the long gun's sub-type that included only three options: "rifle," "rifle/shotgun," and "shotgun." (*Id.* ¶¶ 98–99.) As Title 1 firearms fit into none of those categories, this prevented dealers from accurately completing the form and submitting it to the DOJ. (*Id.* ¶ 101.) Plaintiffs allege that, as a result, class members could not complete the purchase and transfer of their Title 1 firearms.

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] Title 1 firearms are semiautomatic AR-15 type firearms. (*Id.* ¶ 55.)

Franklin informed the DOJ of this deficiency in 2012, but, as alleged, the DOJ intentionally did nothing to fix the deficiency. (*Id.* ¶¶ 113–18.) Several years later, on November 20, 2019, Franklin filed a government tort claim against the DOJ, and in response, the DOJ promised to fix the deficiencies in DES. (*Id.* ¶ 120.) However, the DOJ delayed making changes—again, intentionally, according to the allegations. (*Id.* ¶¶ 121–22.)

On September 1, 2020, the State of California passed the Roberti-Roos Assault Weapons Act ("SB 118"), which made AR-15 type firearms illegal in the State of California. (*Id.* ¶¶ 5, 129.) After SB 118 came into effect, the DOJ fixed the problem with the dropdown menu for long gun sub-types. (*Id.*) But because of SB 118, Plaintiffs could no longer complete the process of registering and taking possession of their firearms. Plaintiffs assert that the DOJ's practice of intentionally delaying correcting the problem in the DES violated their Second Amendment right to bear arms and their Fourteenth Amendment substantive and procedural due process rights.

### III.   PROCEDURAL BACKGROUND

On May 27, 2020, Franklin Armory filed a complaint in the Superior Court of California, County of Los Angeles. (Decl. Robert L. Meyerhoff ("Meyerhoff Decl.") Ex. 1 ("*Franklin Armory* Docket"), ECF No. 25.)[3] On February 17, 2021, Franklin Armory filed the operative second amended complaint. (Meyerhoff Decl. Ex. 4 ("State Second Am. Compl." or "State SAC") 43, ECF No. 26.) In the State SAC, Franklin Armory alleges what Plaintiffs allege in the present case: that the DOJ, by maintaining an incomplete dropdown menu on DES, made it impossible for dealers to register Title 1 firearms, thereby creating a "non-statutory ban" prohibiting Franklin

---

[3] The Court **GRANTS** judicial notice of the docket and court filings in *Franklin Armory*. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (authorizing judicial notice of "matters of public record," including court filings); Fed R. Evid. 201. However, when a court takes judicial notice of documents filed in another court, "it may do so not for the truth of the facts recited therein," but simply for the fact that the documents exist and were filed, "which is not subject to reasonable dispute." *S.B. by & through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1229 n.1 (E.D. Cal. 2018)).

Armory from selling Title 1 firearms in California. (*See* State SAC ¶¶ 68–84, 98, 166.) Furthermore, in support of its contention that Title 1 gun ownership is an entitlement, Franklin Armory alleges in its case that over fifty California statutes restrict the DOJ's discretion to impede the transfer of Title 1 firearms. (*Id.* ¶¶ 38–41, 45–46, 81, 118(e), 166, 189.) It further alleges that the DOJ does not have discretion to "design, develop[], maint[ain], and enforce[] . . . the DES in a manner that functions as a barrier to the lawful transfer of certain lawful firearms." (*Id.* ¶ 81.) In short, Franklin Armory alleges that California law requires the DOJ to provide class members with a way of registering their Title 1 firearms in a reasonably timely manner and that the DOJ has no discretion in carrying out this requirement.

Franklin Armory seeks injunctions against the DOJ to prevent it (1) from "enforcing administrative and/or technological barriers that prevent or otherwise inhibit the sale, loan and/or transfer of lawful 'firearms with an undefined subtype,'" (State SAC, Prayer ¶¶ 7–8,), and (2) "from enforcing the provisions of SB 118 . . . in such a way that would prohibit the acquisition, possession and registration of centerfire variants of the FAI Title 1 for which earnest money deposits were made on or before August 6, 2020," (*id.* ¶ 10.) It further seeks a writ of mandate ordering Defendants "to design, implement, maintain and enforce updates to the DES such that it does not proscribe the lawful sale, transfer and loan of an entire class of lawful 'firearms with an undefined firearm subtype.'" (*Id.* ¶ 9.) On January 27, 2022, the court in *Franklin Armory* dismissed the Armory's claims for injunctive relief. (Meyerhoff Decl. Ex. 7 ("Decision Granting Mot. Dismiss").)

Plaintiffs in the present federal action make similar claims and seek similar relief. Plaintiffs allege that the DOJ "failed to comply with the[] mandates" of California state law by "effectively barring the sale of centerfire variants of Franklin Armory's Title 1 series of firearms." (FAC ¶ 87.) Plaintiffs contend that California's gun regulation scheme created an entitlement to—that is, a property interest in—the transferal and registration of lawful firearms, including Title 1 firearms. (*See id.*

¶¶ 158–59.) To support this contention, Plaintiffs allege that California statutes limit the DOJ's discretion to "delay or deny the lawful sale and transfer of firearms" to situations where "expressly prohibited activities" have taken place. (*Id.* ¶ 88.) Plaintiffs contend that the DOJ deprived them of this property interest and violated their substantive and procedural due process rights under the Fourteenth Amendment by blocking Title 1 firearms transfers. (*Id.* ¶¶ 159, 171.)

Plaintiffs now assert three causes of action, for violations of (1) their Second Amendment right to keep and bear arms, (*id.* ¶¶ 143–54); (2) their substantive due process rights under the Fourteenth Amendment, (*id.* ¶¶ 155–67); and (3) their procedural due process rights under the Fourteenth Amendment, (*id.* ¶¶ 168–79). Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 that Defendants' conduct deprived Plaintiffs of these constitutional rights. (Compl., Prayer ¶¶ 1–3.) Further, Plaintiffs ask the Court to: (1) restrain Defendants from effectively banning registration of "firearms with undefined subtypes"; (2) allow Plaintiffs to submit firearms purchaser information through DES and to take possession of the Title 1 firearms for which they made deposits; and (3) restrain Defendants from enforcing provisions related to SB 118 until Plaintiffs have a reasonable period to submit purchaser information through DES. (*Id.* ¶ 4.) Plaintiffs seek nominal damages, along with attorneys' fees and costs pursuant to 42 U.S.C. § 1988. (*Id.* ¶¶ 5–7.)

In the present case, Defendants now move to dismiss or stay the case, and the Motion is fully briefed. (Opp'n, ECF No. 27; Reply, ECF No. 28.) Defendants argue that *Pullman* abstention is necessary to allow California state courts to reach a final judgment in *Franklin Armory*. (Mot. at 19–21.) For the reasons that follow, the Court agrees and imposes a stay based on the *Pullman* abstention doctrine, without reaching Defendants' other bases for dismissing or staying the matter.

## IV. LEGAL STANDARD

"*Pullman* abstention 'is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy.'" *Courthouse News Serv. v. Planet*,

750 F.3d 776, 783 (9th Cir. 2014) (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010)). The purpose of *Pullman* abstention is not "for the benefit of either of the parties but rather for 'the rightful independence of the state governments and for the smooth working of the federal judiciary.'" *San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095, 1105 (9th Cir. 1998) (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941)). *Pullman* abstention is appropriate when the following three conditions are satisfied:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) [the proper resolution of] the possible determinative issue of state law is uncertain.

*Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (quoting *Confederated Salish v. Simonich*, 29 F.3d 1398, 1407 (9th Cir. 1994)). "[T]he absence of any one of these three factors is sufficient to prevent the application of *Pullman* abstention." *Id.*

Either a plaintiff or a defendant may raise *Pullman* abstention, *San Remo Hotel*, 145 F.3d at 1105, and the court "may sua sponte consider *Pullman* abstention at any time," *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001). When a party moves for *Pullman* abstention, that party bears "the burden of meeting each prong." *See, e.g.*, *Rooke v. City of Scotts Valley*, 664 F. Supp. 1342, 1343 (N.D. Cal. 1987); *cf. Clinton v. Jones*, 520 U.S. 681, 707 (1997) ("The proponent of a stay bears the burden of establishing its need."). When a district court stays a case pursuant to *Pullman* abstention, it should maintain jurisdiction over the case rather than dismiss it. *Courtney v. Goltz*, 736 F.3d 1152, 1164 (9th Cir. 2013).

## V.   DISCUSSION

Plaintiffs allege that the DOJ's intentional delay in correcting the drop-down menu problem in the DES deprived them of a property right and correspondingly violated their substantive and procedural due process rights under the Fourteenth

Amendment. The Court begins with a discussion of property rights principles under the Due Process Clause before proceeding to the *Pullman* abstention analysis.

**A.     Property Rights Principles under the Due Process Clause**

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)). "[P]roperty interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015) (quoting *Roth*, 408 U.S. at 576–77). Entitlements and other property interests are "created and . . . defined by existing rules or understandings" that "secure certain benefits," "support claims of entitlement to those benefits, and "stem from an independent source such as state law." *Roth*, 408 U.S. at 577.

Yet, "[n]ot every procedural requirement ordained by state law . . . creates a substantive property interest entitled to constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008). For a benefit conferred by state law to be a property interest, the recipient must have "more than a unilateral expectation of it." *Roth*, 408 U.S. at 564. Thus, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005).

In analyzing what constitutes an entitlement, courts "begin[] . . . with a determination of what it is that state law provides." *Id.* at 757. Courts look to whether the state law "impose[s] particularized standards" that "significantly constrain" the government's discretion. *Shanks*, 540 F.3d at 1091 (quoting *Fidelity Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1436 (9th Cir. 1986)). In determining whether a benefit is an entitlement, federal courts should maintain a

1 "presumption of deference" to state courts' interpretation of state law. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 167 (1998).

### B. *Pullman* Abstention

Defendants argue that the Court should abstain from hearing this case because (1) this case involves a sensitive area of state law; (2) the state law questions presented in *Franklin Armory* have the potential to moot, or at least alter, the federal constitutional questions alleged here; and (3) a possibly determinative area of state law is uncertain. (Mot. 19–21.) The Court finds that Defendants meet their burden on all these points and exercises its discretion to apply *Pullman* abstention and stay the case.

#### 1. *Sensitive Area of Social Policy*

The first consideration is whether the complaint touches a sensitive area of social policy upon which the federal courts unless no alternative to its adjudication is open. *Smelt v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006). Defendants argue that, because this case hinges on interpretations of state gun regulations, it involves a sensitive area of social policy. (Mot. 19.)

The Court agrees. Plaintiffs' core allegation is that the DOJ undermined California's statutory scheme for firearm regulation by operating an additional clandestine regulatory regime with the intent to ban Title 1 firearms. (FAC ¶ 4.) It is virtually axiomatic that gun regulation is a sensitive area of social policy, and this observation rings especially true in this case, where Plaintiffs are asking the Court to find that a state manipulated its own regulatory scheme for gun purchases in order to commit intentional constitutional violations.

Moreover, to resolve Plaintiffs' claims, the Court would be required to determine the extent to which the DOJ has discretionary powers to act outside of the explicit textual provisions of California statutes, (*see* FAC ¶¶ 39–42), which in turn would require the court to interpret significant portions of California's regulatory scheme for firearms. This task would be difficult because, as Plaintiffs themselves

1 indicate, California has "the most comprehensive, complex, and restrictive [firearms laws] in the nation, with over 800 state statutes regulating firearms and firearms transactions within the state." (FAC ¶ 43; *see also* Opp'n 17 ("Second Amendment litigation challenging firearms policy often does require courts to weigh sensitive issues with broader social policy consequences.").) The complexity of the regulatory scheme itself supports a finding that the problem is "best left to state resolution."[4] *Bank of Am. Nat'l Tr. & Sav. v. Summerland Cnty. Water Dist.*, 767 F.2d 544, 546 (9th Cir. 1985.)

California's ban on Title 1 firearms is part of its attempt to balance the many competing interests that arise in the context of firearm regulation, and this Court ought not intrude upon that attempt unless it must. Indeed, if Plaintiffs are successful, the outcome of this case would provide certain Californians with a way to obtain firearms that the people of California, through its legislature, have recently declared illegal. (FAC ¶ 5.) This case undoubtedly "touches a sensitive area of social policy," and this Court "ought not" to adjudicate it if there is an alternative. *Smelt*, 447 F.3d at 679. And there is an alternative: wait for the California courts to complete their adjudication of *Franklin Armory*. For these reasons, this case meets the first *Pullman* abstention requirement.

  2.   *Avoidance of Constitutional Adjudication*

The second *Pullman* element is whether constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy. *Smelt*, 447 F.3d at 679. With respect to this requirement, "[t]he assumption which justifies abstention is that a federal court's erroneous determination of a state law issue may result in premature or unnecessary constitutional adjudication, and

---

[4] Additionally, *Pullman* abstention is especially appropriate where a federal court is asked to resolve state-law questions in a way that may invalidate a state statute or regulation. *Fireman's Fund Ins. Co. v. Garamendi*, 790 F. Supp. 938, 960 (N.D. Cal. 1992); *see Bank of Am.*, 767 F.2d at 547. Here, although Plaintiffs do not seek to invalidate SB 118 altogether, they do ask the Court to enjoin the enforcement of SB 118 against Plaintiffs and require California to process Plaintiffs' gun applications despite SB 118 having been duly enacted. (*See* FAC, Prayer ¶ 4(a)–(c).)

unwarranted interference with state programs and statutes." *C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 378 (9th Cir. 1983) (quoting *Pue v. Sillas*, 632 F.d 74, 79 (9th Cir. 1980)).

Despite the exacting language in *Smelt*, federal courts, including those in the Ninth Circuit, have invoked *Pullman* abstention where resolution of the state law question "has the potential of at least altering the nature of the federal constitutional questions." *C-Y*, 703 F.2d at 378. The court need not "be absolutely certain" that a state court decision will "obviate the need for considering the federal constitutional issues." *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996). Instead, "it is sufficient if the state law issues might 'narrow' the federal constitutional questions." *Id.* (quoting *Pearl Inv. Co. v. City & County of San Francisco*, 774 F.2d 1460, 1464 (9th Cir. 1985)); *see Sullivan Equity Partners, LLC v. City of Los Angeles*, No. 2:16-cv-07148-CAS (AGRx), 2017 WL 1364578 at *6 (C.D. Cal. Apr. 12, 2017) (noting this prong is often met "where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks").

Defendants argue that *Franklin Armory* may eliminate the need for this Court to rule on constitutional issues because the relief sought in the *Franklin Armory* is identical to the relief sought in this one. (Mot. 20–21.) The Court agrees.

Franklin Armory is the manufacturer of Plaintiffs' Title 1 firearms. (*Id.* ¶ 22.) Moreover, Franklin Armory and Plaintiffs seek three identical injunctions in their respective cases, (*compare* State SAC, Prayer ¶¶ 7–9, *with* FAC, Prayer ¶ 4(a)–(c)), and, as discussed, the basic allegations and contentions in the two cases are the same. Thus, if the Armory succeeds in *Franklin Armory*, Plaintiffs in this case will obtain their requested relief—that is, they will get their firearms—thereby mooting the controversy and eliminating the need for this Court to adjudicate Plaintiffs' federal constitutional claims. *See Sinclair*, 96 F.3d at 409 (finding the second *Pullman* element satisfied where state court provision of just compensation for a taking under state law "might" obviate need to address federal taking claim). It is also possible that

Franklin Armory will lose its case due to California courts finding no actionable property right. That finding would apply here and would also dispose of this matter. Thus, there are multiple ways California courts might resolve *Franklin Armory* that would "alter[]" a key contested state-law issue. *C-Y*, 703 F.2d at 378.

Plaintiffs argue that, because the state court has dismissed Franklin Armory's claims for injunctive relief, the ruling in *Franklin Armory* will not terminate this action. (Opp'n 19.) This argument is unavailing. As Defendants correctly point out, Franklin Armory cannot appeal the dismissal of claims one, two, and eight until the Superior Court reaches final judgment on the damages claims. (Mot. 22 n. 5; Reply 10); *see* Cal. Civ. Proc. Code § 904.1 (setting forth "one final judgment rule" under which, generally speaking, a party may appeal only after a final judgment). Thus, it remains uncertain how California courts will ultimately resolve Franklin Armory's claims one, two, and eight. Due to this uncertainty, the Superior Court's dismissal of claims in *Franklin Armory* does not prevent the Court from invoking *Pullman* abstention. *See Smelt*, 447 F.3d at 681 (affirming a *Pullman* stay of a federal case challenging the constitutionality of a ban on gay marriage even after a California Superior Court had made an initial adverse ruling in a related state action).

For these reasons, this case meets the second *Pullman* abstention requirement.

3.  *Uncertain, Determinative Issue of State Law*

The third *Pullman* element is satisfied when the state court's resolution of a determinative issue of state law is uncertain. *Pearl*, 774 F.2d at 1465 (stating *Pullman* abstention appropriate when federal court "cannot predict with any confidence how the state's highest court would decide an issue of state law"). "Resolution of an issue of state law might be uncertain because the particular statute is ambiguous . . . or because the question is novel and of sufficient importance that it ought to be addressed first by a state court." *Id.*

Here, Defendants argue that it is uncertain whether California state courts will find that Plaintiffs have a property interest in acquiring their Title 1 firearms.

1  (Mot. 21; Reply 10.) The Court agrees and finds the lack of certainty around this key
2  and novel issue supports *Pullman* abstention. The Court is aware of no case law that
3  indicates or suggests that California's highest court will (or will not) find that
4  Plaintiffs' right to obtain Title 1 firearms is an entitlement. Plaintiffs claim such an
5  entitlement, but they provide no supporting case law to show that California
6  recognizes an entitlement of that kind. (*See* FAC ¶¶ 171–72.) Defendants, for their
7  part, contend that Plaintiffs possessed only a "unilateral expectation" in acquiring and
8  possessing Title 1 firearms, but Defendants likewise provide no California case law to
9  support their position. (*See* Mot. 15.) Thus, this Court would be left without any
10 guidance from California courts in determining whether Plaintiffs have a property
11 interest in acquiring their Title 1 firearms. For these reasons, this case meets the third
12 *Pullman* abstention requirement.

13    In summary, *Pullman* abstention is appropriate because gun regulation is a
14 sensitive area of social policy and this case in particular invites the federal courts to
15 intervene in a state's execution of its own regulations; the result of *Franklin Armory*
16 might allow the Court to avoid deciding constitutional questions; and the Court cannot
17 predict whether California courts will determine that Plaintiffs' right to obtain Title 1
18 firearms constitutes a property interest. The Court therefore stays the case pending the
19 final outcome in *Franklin Armory*. *See Caldara v. City of Boulder*, 955 F.3d 1175,
20 1183 (10th Cir. 2020) (affirming *Pullman* abstention on a Second Amendment
21 challenge to a local ordinance that prohibited assault weapons and raised the minimum
22 age to possess firearms); *see also W. Va. Citizens Def. League, Inc. v. City of
23 Martinsburg*, 483 F. App'x 838, 840 (4th Cir. 2012) (affirming *Pullman* abstention on
24 a Second Amendment challenge to a ban of firearms in city-owned buildings); *cf.
25 Doyle v. City of Medford*, 565 F.3d 536, 544 (9th Cir. 2009) (certifying a question to
26 the Oregon State Supreme Court to determine whether a state statute generated an
27 entitlement to post-retirement healthcare coverage for former city employees).
28

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion. (ECF No. 23.) The Court abstains pursuant to *Pullman* and **STAYS** this case for all purposes. Defendants' Motion is otherwise denied or mooted.

Starting on **December 1, 2022**, and by the first of the month every three (3) months thereafter, the parties shall file a Joint Status Report informing the Court of the status of the *Franklin Armory* case. Furthermore, the parties shall file a Joint Status Report no later than ten (10) days following any final judgment by the trial or appellate courts in *Franklin Armory*. Failure to timely file these reports may result in dismissal of the case for failure to comply with court orders.

**IT IS SO ORDERED.**

August 12, 2022

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**