C.D. Michel – SBN 144258
Anna M. Barvir – SBN 268728
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

ROB BONTA
Attorney General of California
CHARLES J. SAROSY
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-7836
Fax: (916) 324-8835
E-mail: Jerry.Yen@doj.ca.gov

Attorneys for Defendants

**DISTRICT COURT OF THE UNITED STATES**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ENDIR BRISENO, NEIL OPDAHL-LOPEZ, and RODNEY WILSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ROBERT A. BONTA, in his official capacity as Attorney General for the State of California; LUIS LOPEZ, in his official capacity as Acting Chief of the California Department of Justice Bureau of Firearms; CALIFORNIA DEPARTMENT OF JUSTICE; and DOES 1-10,

Defendants.

Case No.: 2:21-cv-09018-ODW (PDx)

**SIXTEENTH JOINT STATUS REPORT RE: *FRANKLIN ARMORY V. CALIFORNIA DEPARTMENT OF JUSTICE***

Pursuant to this Court's September 19, 2024 Order, Plaintiffs Endir Briseno, Neil Opdahl-Lopez, and Rodney Wilson, and Defendants Rob Bonta, Luis Lopez, and California Department of Justice submit this Sixteenth Joint Status Report on the status of *Franklin Armory, Inc. v. California Department of Justice*, Second Appellate District Case No. B340913 (L.A. Super. Ct. Case No. 20STCP01747).

As earlier status reports have indicated, the state court in the *Franklin Armory* matter entered judgment for the defendants on July 12, 2024, and mailed a Notice of Entry of Judgment on July 15, 2024. Plaintiffs appealed the judgment and, on July 13, 2026, the California Court of Appeal affirmed the judgment. A copy of the opinion is attached as **Exhibit A**.

The Court of Appeal's decision was made final on August 12, 2026, thirty days after the issuance of the opinion. No petition for review to the California Supreme Court was filed before the August 22, 2026, deadline. But the matter has not yet returned to the superior court for final disposition. The Parties, therefore, continue to monitor the status of the state-court proceedings pending final resolution.

Dated: August 26, 2026

**MICHEL & ASSOCIATES, P.C.**

*s/ Anna M. Barvir*
Anna M. Barvir
Attorneys for Plaintiffs

Dated: August 26, 2026

ROB BONTA
Attorney General of California

*s/ Jerry Yen*
JERRY YEN
Deputy Attorney General
Attorneys for Defendants

**ATTESTATION OF E-FILED SIGNATURES**

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this FIFTEENTH JOINT STATUS REPORT RE: *FRANKLIN ARMORY V. CALIFORNIA DEPARTMENT OF JUSTICE*. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: August 26, 2026

*s/ Anna M. Barvir*
Anna M. Barvir

# EXHIBIT A

Filed 7/13/26

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.
FILED
Jul 13, 2026
EVA McCLINTOCK, Clerk
C.Meza Deputy Clerk

FRANKLIN ARMORY, INC. et al.,

Plaintiffs and Appellants,

v.

CALIFORNIA DEPARTMENT OF JUSTICE et al.,

Defendants and Respondents.

B340913

(Los Angeles County Super. Ct. No. 20STCP01747)

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant and Daniel S. Murphy, Judges. Affirmed.

Michel & Associates, C.D. Michel, Jason A. Davis, Anna M. Barvir and Konstadinos T. Moros for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Iveta Ovsepyan Donna M. Dean and Kenneth G. Lake, Supervising Deputy Attorneys General, for Defendants and Respondents.

Firearms manufacturer Franklin Armory, Inc., and California Rifle & Pistol Association, Inc. (CRPA)[1] appeal from the judgment entered after the trial court granted the summary judgment motion filed by the California Department of Justice (DOJ) and former Attorney General Xavier Becerra in this action challenging DOJ's operation of the California Dealer Record of Sale Entry System (DES), a mandatory electronic reporting system for firearms sales in California.

In 2019 Franklin Armory introduced the "Title 1," a semiautomatic, centerfire long gun that did not fall within the Penal Code definition of "rifle" or "shotgun." Because the Title 1 was outside these categories, it was not subject to California's restrictions on assault weapons. However, there was no mechanism for licensed dealers to record sales of the Title 1 on the DES because the system required users to enter a gun subtype from a drop-down list that only included rifles and shotguns. After taking deposits from thousands of potential customers, Franklin Armory filed this action for declaratory, injunctive, and writ relief, due process violations, intentional interference with contractual relations, and related claims, alleging DOJ intentionally delayed modifying the DES until after the Legislature enacted Senate Bill No. 118 (2019-2020 Reg. Sess.), effective September 1, 2020 (Senate Bill 118), which amended the definition of "assault weapon" in Penal Code

[1] For all relevant purposes, CRPA joined Franklin Armory's submissions and contentions.

section 30510, subdivision (a),[2] in a manner that effectively banned sales of the Title 1.

On appeal, Franklin Armory contends the trial court erred in granting DOJ and Becerra's motion to dismiss Franklin Armory's causes of action for declaratory and injunctive relief and for a writ of mandate, and in granting judgment on the pleadings with respect to the causes of action for violations of procedural and substantive due process and to enjoin waste of taxpayer funds, after the court found these causes of action were rendered moot by DOJ's corrective modifications to the DES and the enactment of Senate Bill 118. We affirm these rulings because the court could no longer provide effective relief.

Franklin Armory also contends the trial court erred in granting summary judgment as to its remaining causes of action for intentional interference with contractual relations and related claims after the court found DOJ and Becerra were immune from tort liability under the Government Claims Act (Gov. Code, § 810 et seq.; GCA). We agree with DOJ and Becerra that DOJ could not be held liable for failure to discharge a mandatory duty under Government Code section 815.6 because it did not have a statutory duty to modify the DES in the manner and priority dictated by Franklin Armory. In addition, Becerra and DOJ employees are immune from tort liability under Government Code section 820.2 for their discretionary actions in operating the DES. We therefore affirm.

---

[2] Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Reporting Requirement for Firearms Sales*[3]

With limited exceptions, all firearm sales and transfers in California must be completed through a licensed dealer. (§ 27545.) At the time of sale, the dealer is required to report information regarding the purchaser and transaction to DOJ using DOJ's prescribed electronic reporting system. (*Id.*, §§ 28100, 28155, 28205, subd. (c).) The report must include, among other things, firearm-specific information such as the manufacturer, model name, serial or identification number, caliber, type of firearm, barrel length, and color. (*Id.*, § 28160, subd. (a)(7)-(a)(17).) DOJ is required to maintain information it receives through the reporting system for law enforcement purposes, including "to assist in the investigation of crime, . . . the arrest and prosecution of criminals, and the recovery of lost, stolen, or found property." (*Id.*, §11106, subd. (a)(1).)

With respect to firearm types, the Penal Code defines a "long gun" as "any firearm that is not a handgun or a machinegun." (§ 16865.) A "handgun" is "any pistol, revolver, or firearm capable of being concealed upon the person" (*id.*, § 16640); each of these categories, in turn, is limited to guns with a barrel length of less than 16 inches. (*Id.*, § 16530.) Among guns that may have a longer barrel, a "rifle" is a gun "designed . . . and intended to be fired from the shoulder and . . . to fire only a single projectile through a rifled bore . . . ." (*Id.*, § 17090.) A "shotgun" is likewise "designed . . . and intended

[3] Our discussion of the factual background is based on undisputed facts taken from the evidence submitted in connection with DOJ's motion for summary judgment.

to be fired from the shoulder" but fires a single or multiple projectiles "through a smooth bore." (*Id.*, § 17190.)

The DES is the web-based application designed, developed, and maintained by the DOJ for mandatory use by dealers, and since its implementation in 2003, it has been the exclusive mechanism for reporting firearm sales. To submit a transaction report using the DES, the dealer must select a firearm type such as a "long gun" or "handgun" from a drop-down menu on the DES web interface. Prior to October 2021, if a dealer selected "long gun," the DES would populate a pull-down menu with only three options: "rifle," "shotgun," and "rifle/shotgun combination." The dealer could not complete the reporting process without selecting a subtype from one of these three options. Unlike other data entry fields in the DES (such as the field for gun color or the purchaser's address), there was no "other" option for long gun subtypes.

B. *Introduction of the Title 1*

Franklin Armory is a federally licensed firearms manufacturer based in Nevada. On or around October 15, 2019 Franklin Armory announced the release of the Title 1, a centerfire[4] semiautomatic gun with a 16-inch barrel. The Title 1

---

[4] A "centerfire" firearm is designed to use cartridges that are ignited "by the striking of a hammer or firing pin upon a cap or primer at the center of the base" and is generally distinguished from a "rimfire" firearm. (See Merriam Webster's Online Dict. (2026) <https://www.merriam-webster.com/dictionary/center-fire> [as of July 8, 2026], archived at <https://perma.cc/B34Q-MCLB >.) Franklin Armory introduced both a centerfire and rimfire variant of the Title 1, but, as we discuss, only the centerfire

qualifies as a long gun under the Penal Code, but because it was designed without a shoulder stock (i.e., intended to be fired from the shoulder), it does not fall within the statutory definition of a rifle or a shotgun; nor does it meet the definition of any other firearm subtype, such as pistol or revolver.

On October 24, 2019 Franklin Armory's attorney sent a demand letter to then-Attorney General Becerra, stating that Franklin Armory's announcement of the Title 1 had "generated a substantial amount of interest," but following the announcement, California firearms dealers notified Franklin Armory they would be unable to sell the Title 1 because of the DES's limited list of long gun subtypes. The letter stated that Franklin Armory's president, Jay Jacobson, had spoken to DOJ and was advised DOJ was "working on correcting the issue," but "no timeline for the correction of the defect has been established." The letter asserted the DES defect could be rectified by "including within the list the various types of other long guns, or simply including a single catch-all within the list [of long gun subtypes] such as '"[o]ther."'

Franklin Armory asserted that DOJ and Becerra had violated the Second Amendment and the due process clause of the Fourteenth Amendment, and it had committed tortious interference with its prospective economic advantage. Franklin Armory demanded that DOJ "immediately correct the defect in the DES by permitting the sale of long guns that are neither shotguns nor rifles, such as the Title 1," and that it pay damages for its refusal or delay in doing so.

---

variant is an assault weapon following the enactment of Senate Bill 118. Our unspecified references to the Title 1 refer to the centerfire variant.

On January 8, 2020 Deputy Attorney General P. Patty Li responded to the demand letter, stating, "[DOJ] is currently implementing the modifications necessary to enable DES to process sales of the new Title 1 firearm." Li stated that DOJ staff would "need to program, develop, and regression test the modifications, as well as conduct user acceptance testing, for all of these systems," which would take several hundred work hours for its information technology staff. In light of its existing obligations to conduct ongoing maintenance of firearms-related systems and implement changes required by recent legislation, the modification could take "several months."

Because Franklin Armory concluded the DES defect would prevent sales of the Title 1, it offered customers the option to pay it a $5 refundable deposit toward the purchase of the Title 1, which had a list price of $945. The deposit, according to Jacobson, "essentially saved a 'spot in line'" for when the DES was fixed. Franklin Armory ultimately collected 35,000 deposits for the Title 1. Franklin Armory admits that no one ever purchased a Title 1, and no dealer attempted to process the sale of a Title 1 using the DES.

C. *Senate Bill 118*

On May 14, 2020 DOJ submitted a budget change proposal requesting more than $1 million in DES operational funds "to regulate assault weapons that are currently not defined as a rifle, pistol or shotgun" and proposing expansion of the definition of an assault weapon in section 30515, subdivision (a). The proposal was "intend[ed] to fix current loopholes in statute that allow[] manufacturers to make weapons that circumvent [the] intention

of assault weapons laws" and included "trailer bill language necessary to implement this proposal."

As DOJ's proposal explained, existing law defined "assault weapon" to include semiautomatic pistols, centerfire rifles, and shotguns with enumerated characteristics, such as a flash suppressor, second handgrip, or high-capacity magazine. (See § 30515, subd. (a)(1)-(8).) Sales of assault weapons were severely restricted under the Roberti-Roos Assault Weapons Control Act of 1989 (Stats. 1989, ch. 19, § 3, p. 64; AWCA) and subsequent amendments. (See *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 477 [describing AWCA].) The budget change proposal explained, "Under current law, it is possible to legally purchase and possess a firearm that has all the features of a banned assault weapon, such as a forward pistol grip or grenade launcher, without registering it with the DOJ, due to a loophole that requires assault weapons to be defined as either a rifle, pistol, or shotgun."

On August 4, 2020 the Legislature adopted Senate Bill 118 as a budget trailer bill, which the Governor signed on August 6; as an appropriations bill, Senate Bill 118 took effect immediately. (Cal. Const., art. IV, § 8, subd. (c)(3).) In relevant part, the bill amended section 30515, subdivision (a), to expand the definition of "assault weapon" to include a "centerfire firearm that is not a rifle, pistol, or shotgun" but has specified attributes. (See Stats.2020, ch. 29, § 38, adding § 30515, subd. (a)(9)-(11).) The language of the amendment mirrored DOJ's May 2020 proposed bill language.

The parties do not dispute that the centerfire Title 1 is an assault weapon under section 30515 as amended by Senate Bill 118, and, under the new law, the gun cannot be registered in California unless it was lawfully possessed prior to September 1,

2020. (See § 30685 [under certain conditions, AWCA restrictions "do[] not apply to the possession of an assault weapon as defined by paragraph (9), (10), or (11) of subdivision (a) of Section 30515 by a person who has possessed the assault weapon prior to September 1, 2020."].)

D. *The Complaint*

Franklin Armory and CRPA[5] filed this action on May 27, 2020, and they amended the complaint following the enactment of Senate Bill 118. After the trial court sustained DOJ and Becerra's demurrer to the causes of action for equitable relief with leave to amend, on February 17, 2021 Franklin Armory and CRPA filed the operative second amended complaint (complaint).[6]

The complaint alleged nine causes of action against DOJ and Becerra (individually and in his official capacity): (1) declaratory and injunctive relief; (2) writ of mandate; (3) tortious interference with contractual relations; (4) tortious interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; (6) denial of

---

[5] CRPA, as alleged, is an Orange County-based nonprofit organization committed to defending the "fundamental right to acquire and possess lawful firearms," whose membership includes Californians who wished to purchase or sell uncategorized firearms like the Title 1 but were prevented from so doing by DES limitations.

[6] The matter was assigned to Judge James C. Chalfant in the superior court writs and receivers department. Judge Chalfant presided over the matter until January 28, 2022, when he dismissed the causes of action for injunctive and declaratory relief and for a writ of mandate. The matter was then reassigned to Judge Daniel S. Murphy.

procedural due process in violation of 42 United States Code section 1983 (Section 1983); (7) denial of substantive due process in violation of Section 1983; (8) declaratory and injunctive relief for violations of the Administrative Procedure Act (Gov. Code, § 11340, et seq.; APA); and (9) public action to enjoin waste of taxpayer funds under Code of Civil Procedure section 526a.

The general factual allegations common to all causes of action included those asserted in Franklin Armory's demand letter: the Title 1 is a long gun under California law, but it is not a rifle, shotgun, or rifle/shotgun, which are the only long gun subtypes recognized by the DES. Consequently, dealers could not sell the Title 1 because they could not meet mandatory reporting requirements. The complaint further alleged that Franklin Armory notified DOJ of the defect in October 2019, but DES failed to correct the defect and, on information and belief, DOJ had already developed a solution. DOJ could resolve the defect by providing an "other" subtype option for long guns; permitting "the user to proceed without completing the subtype categories"; or "authoriz[ing] . . . alternative means [of reporting] pursuant to the authority granted it by Penal Code section 28205, subdivision (c)."[7] DOJ did not implement any solution, and instead, DOJ and Becerra conspired to delay "any action that would otherwise permit the formal sale, transfer, and delivery of the [Title 1] style firearms until legislation designed and intended to ban the sale, transfer, and delivery of the Title 1 would be implemented and effective." DOJ's failure to address

---

[7] Section 28205, subdivision (c), provides, "On or after January 1, 2003, *except as permitted by [DOJ]*, electronic transfer shall be the exclusive means by which information is transmitted to the department." (Italics added.)

the DES defect before enactment of Senate Bill 118 constituted an "underground regulation" in violation of the APA and a de facto illegal ban on the sale of lawful firearms.

In its causes of action for declaratory and injunctive relief and a writ of mandate (first, second, and eighth causes of action), Franklin Armory sought orders compelling DOJ and Becerra "to design, implement, maintain and enforce updates to the DES such that it does not proscribe the lawful sale, transfer and loan of an entire class of lawful firearms" like the Title 1, enjoining them from "enforcing administrative and/or technological barriers that prevent the sale of lawful 'firearms with an undefined subtype,'" and prohibiting them from enforcing the AWCA "in a manner that prohibits the acquisition and registration of [Title 1] firearms for [which] earnest money deposit[s] were made on or before August 6, 2020" (the effective date of Senate Bill 118).

Franklin Armory's due process claims (sixth and seventh causes of action) similarly sought orders enjoining DOJ and Becerra from enforcing Senate Bill 118 to prohibit the sale of Title 1 guns for which customers paid deposits before August 6, 2020. The taxpayer claim (ninth cause of action) sought to restrain "illegal expenditure" of public funds on "the installment and maintenance of the non-compliant DES." The tortious interference claims (third, fourth, and fifth causes of action) sought damages based on DOJ's and Becerra's interference with Title 1 sales, including at least $33 million in lost contracted sales to the customers who had paid $5 deposits, lost profits, reputational damage due to Franklin Armory's inability to fulfill orders, and punitive damages.

E. *The Motion To Dismiss the Causes of Action for Declaratory and Injunctive Relief and for Writ of Mandate*

On November 29, 2021 the Attorney General, representing DOJ and Becerra in his personal and official capacity, filed a motion to dismiss the causes of action for injunctive and declaratory relief and writ of mandate on the grounds these claims were rendered moot because, as of October 1, 2021, DOJ modified the DES to include an "other" option in the long gun subtype menu, allowing dealers to record sales of the Title 1 and other long guns that were not rifles or shotguns. Cheryle Massaro-Florez, an information technology supervisor in DOJ's Application Development Bureau – Firearms Software Development Unit (ADB), submitted a declaration explaining DOJ's process in engineering and deploying the DES modification, and Maricel Leyva, a manager in DOJ's Bureau of Firearms Customer Support Center, described a bulletin DOJ posted prior to deployment "to notify firearms dealers about the modification of the DES and to instruct them how to utilize the 'other' option."

In its opposition, Franklin Armory conceded that by implementing the modification, DOJ had ceased its policy of blocking lawful sales of the Title 1, and Franklin Armory did not "inherently disagree" that its claims for declaratory, injunctive, and writ relief were rendered moot. However, it argued the trial court should exercise its discretion to hear its claims because the dispute involved an issue of broad public interest, and the dispute was likely to recur because DOJ could in the future reinstate administrative and technological barriers to prevent lawful firearms sales.

After a hearing, on January 27, 2022 the trial court granted the motion. The court found that Franklin Armory did "not dispute that the [o]ther option removes the technological barriers alleged," which rendered the claims at issue moot. The court agreed with Franklin Armory that its claims implicated the public's fundamental interest in protecting Second Amendment rights, but there was no basis to believe the controversy would recur, either between the parties or with others.

F. *The Motion for Judgment on the Pleadings*

On August 14, 2023 the Attorney General filed a motion for judgment on the pleadings as to the tortious interference, due process, and taxpayer causes of action. As set forth in the declaration of Deputy Attorney General Kenneth G. Lake, the parties had reached an agreement clarifying that Franklin Armory and CRPA were seeking only equitable relief, not damages, on their due process and taxpayer claims; Franklin Armory was seeking monetary damages on its tortious interference causes of action only from Becerra in his official capacity as former Attorney General; and CRPA was not seeking damages from any party on any cause of action. The Attorney General argued in relevant part that the due process and taxpayer claims had been rendered moot, and, as to the tort claims, DOJ and Becerra were immune from liability under the GCA.[8]

---

[8] Although Franklin Armory agreed that it was only seeking damages from Becerra, the parties litigated whether DOJ and Becerra were liable (or immune from liability) under Government Code sections 815.6 (public entity liability for failure to discharge

After briefing and a hearing, the trial court granted the motion in part, without leave to amend as to the due process and taxpayer claims. The court found, "[Senate Bill] 118 already allows individuals possessing a Title [1] firearm prior to September 1, 2020, to keep it if the firearm is properly registered," and insofar as Franklin Armory was seeking an order directing sales of the centerfire Title 1 guns to those who paid $5 deposits, this was an "entirely different remedy of allowing individuals to newly obtain a banned assault weapon," which was "patently illegal." Moreover, the taxpayer claim was mooted by DOJ's October 2021 modification of the DES.

The trial court denied judgment on the pleadings as to the tortious interference claims, finding DOJ and Becerra were not immune from liability as alleged, because the complaint sufficiently alleged they violated a mandatory duty to provide a method for dealers to report Title 1 sales created by section 28155 (stating that DOJ "'shall prescribe the form of the register and the record of electronic transfer'"). The court reasoned that although DOJ may have had discretion as to how to operate the DES, "discretion over the manner of implementing an electronic reporting system does not mean the discretion to refuse to implement a reporting system entirely for certain firearms." (Boldface and italics omitted.)

---

mandatory duty) and 820.2 (public employee immunity for discretionary acts). The trial court later observed in ruling on DOJ and Becerra's summary judgment motion that DOJ could be potentially liable under section 815.6. Conversely, Becerra and other DOJ employees could be liable only in limited circumstances under section 820.2.

G. *The Motion for Summary Judgment*

On April 26, 2024 the Attorney General filed a motion for summary judgment (and summary adjudication) of the tortious interference causes of action (the only remaining causes of action), arguing, inter alia, that DOJ's modifications to the DES to accommodate sales of "other" long guns were discretionary actions, not a statutory mandate under section 28155. DOJ was therefore not liable under Government Code section 815.6, and DOJ, its employees, and Becerra were immune from liability under Government Code section 820.2.

In a supporting declaration, Allison Mendoza, the assistant bureau chief and later director of DOJ's Bureau of Firearms responsible for managing DES, described DOJ's response to Franklin Armory's October 2019 demand letter and the process for modifying DES. Mendoza averred that at any given time, there are numerous pending requests to enhance the DES to address changes in the law and regulations, court orders, and technological advancements. Implementation and prioritization of these requests involved consideration of several factors, including available personnel and resources, the cost of each proposed project, the time necessary to complete a project, and public safety considerations.

Mendoza declared that after receiving Franklin Armory's demand letter, in late 2019 the Bureau of Firearms, in collaboration with ADB, initiated a review to determine the staffing and resources necessary to add an option for "other" to the long gun subtype menu on the DES. ADB determined it would take many months to implement the modification and would require well over a dozen personnel, many of whom would need to be diverted from other projects, and the modification

would require changes to other applications and databases besides DES. The onset of the COVID-19 pandemic in March 2020 presented additional staffing difficulties. ADB also considered a temporary modification tailored only to Title 1 transfers, with a later enhancement to address all uncategorized long guns, but even the temporary modification would present operational difficulties, take a few months to implement, and raise public safety concerns, so DOJ decided not to proceed with this option. After Senate Bill 118 was enacted in August 2020, rendering the Title 1 centerfire long gun a restricted assault weapon, DOJ "decided after weighing competing priorities among the multiple information technology projects pending at that time in the middle of the COVID-19 pandemic, to implement at a later date the DES enhancement that added an 'other' option." The modification was completed on October 1, 2021.

The Attorney General also submitted excerpts of the deposition of Massaro-Florez, who oversaw implementation of the "other" option in the DES. Massaro-Florez testified the DES modification project took place between July 1 and October 1, 2021 and occupied her 12-person staff and additional staff from ADB. The project was completed in four phases, including analysis, build, system integration, and testing, and it was complicated by the need to modify several other applications and databases.

In its opposition, Franklin Armory argued that DOJ's and Becerra's "excuse-making for why they could not prioritize the DES fix" might be relevant to their immunity for discretionary acts, but, as the trial court had concluded in ruling on the prior pleadings motions, section 28155 created a mandatory duty for DOJ to operate the DES in a manner that allowed lawful

firearms sales. Franklin Armory submitted evidence challenging several aspects of Mendoza's stated timeline for modifying DES. For example, as early as January 8, 2020, Deputy Attorney General Li had advised Franklin Armory that it was "currently implementing the modifications necessary to enable DES to process sales of the new Title 1 firearm." Five months later, DOJ submitted its budget change proposal, drafted by Mendoza, in which DOJ requested DES funds "to regulate assault weapons that are currently not defined" and proposed bill language "'intend[ed] to fix current loopholes in statute'" that allowed manufacturers to "'circumvent'" the intent of AWCA. Senate Bill 118 adopted DOJ's proposal, and Mendoza admitted in her deposition that she could not think of any other instance where firearms-related legislation was adopted by the "budget trailer bill" process. Massaro-Florez also admitted during her deposition that there were two separate projects to modify the DES to allow "other" long guns to be recorded: the first project progressed as far as final testing before it was terminated for reasons unknown to her; the second project began on its "own timeline" and culminated in the October 2021 modification.[9]

[9] On June 10, 2025 we granted Franklin Armory's request for judicial notice of DOJ information technology service logs for DES projects, which DOJ produced after entry of judgment in response to a public records act request. The logs suggest that DOJ initiated projects relating to addition of an option for the "other" category on the long-gun menu in January and February 2020.

After a hearing, on July 11, 2024 the trial court granted the motion.[10] In its seven-page order, the court held that DOJ and Becerra were not liable in tort under Government Code section 815.6 because "the cited Penal Code provisions do not require a particular action be taken with regard to the DES system." Further, "[t]o the extent DOJ was required to implement an electronic reporting system (see § 2805(c)), it did so by implementing the DES, which has existed since 2003," and "[h]ow DOJ implements the reporting system, including what changes to make in response to the emergence of a new firearm is left in its discretion." The court observed that Franklin Armory admitted that section 28205, subdivision (c), "grants DOJ 'authority' to implement a variety of 'alternative means' to allow for processing of Title 1 firearms.'"

The trial court concluded that DOJ and Becerra demonstrated their entitlement to public employee immunity for discretionary acts under Government Code section 820.2. The facts adduced in the motion, including Mendoza's declaration and deposition testimony, "show[ed] that changing the DES is a policy-level decision requiring the exercise of discretion, rather than a ministerial implementation of an existing directive." Franklin Armory's evidence challenging aspects of Mendoza's testimony did not create a dispute as to DOJ's showing "that the process involves consideration of competing interests, resource allocation, budget constraints, and the like."

---

[10] The trial court did not rule on Franklin Armory's evidentiary objections, finding the objections were not material to the court's disposition of the motion. Franklin Armory does not contend on appeal that any evidence was erroneously admitted.

On July 12, 2024 the trial court entered judgment in favor of DOJ and Becerra. Franklin Armory and CRPA timely appealed.

## DISCUSSION

A. *The Trial Court Properly Dismissed the First, Second, Sixth, Seventh, and Ninth Causes of Action as Moot*

1. *Governing law and standard of review*

"A court is tasked with the duty '"to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (*In re D.P.* (2023) 14 Cal.5th 266, 276; accord, *People ex rel. Alameda County Taxpayers' Assn., Inc. v. Brown* (2025) 114 Cal.App.5th 919, 931.) "'A case becomes moot when events "'render[] it impossible for [a] court, *if it should decide the case in favor of plaintiff*, to grant him any effect[ive] relief.'"'" (*Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 65; accord, *D.P.*, at p. 276.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*D.P.*, at p. 276.)

"Courts regularly find cases non-justiciable when injunctive relief is sought but, . . . the act sought to be enjoined has been performed." (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 772; see *Giles v. Horn* (2002) 100 Cal.App.4th 206, 226-227 [action to prohibit expenditure of public funds on private contractors rendered moot on appeal

because contracts expired and were fully performed].) "Similarly, an intervening change in the law—namely, the repeal or modification of a statute under attack or subsequent legislation correcting a challenged deficiency—that is the crux of a case may result in mootness." (*Shaw*, at p. 773, citing *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704-706 [challenge to zoning ordinance as inconsistent with general plan rendered moot on appeal when county adopted new general plan that was consistent with ordinance].) """When events render a case moot, the court, whether trial or appellate, should generally dismiss it.""" (*Save Berkeley's Neighborhoods v. Regents of University of California* (2023) 91 Cal.App.5th 872, 886; accord, *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722.)

"'The general rule regarding mootness, however, is tempered by the court's discretionary authority to decide moot issues. When an action involves a matter of continuing public interest that is likely to recur, a court may exercise an inherent discretion to resolve that issue, even if an event occurring during the pendency of the appeal normally would render the matter moot.'" (*Moore v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 280, 296; see *In re D.P., supra*, 14 Cal.5th at p. 282.)

"'[J]udgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' [Citation.] Courts may consider judicially noticeable matters in the motion as well."

(*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; see Code Civ. Proc., § 438, subd. (c)(3)(B)(ii); *City of Rancho Palos Verdes v. State of California* (2025) 114 Cal.App.5th 13, 23.) Moreover, "[i]ssues of justiciability, such as mootness, are generally reviewed de novo." (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 319; accord, *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99.)[11]

2. *Senate Bill 118 mooted Franklin Armory's request for an order authorizing Title 1 sales*

On appeal, Franklin Armory does not dispute that the October 2021 DES modification rendered moot its claims for declaratory and injunctive relief and for a writ of mandate compelling DOJ to operate DES in a manner that does not prevent the lawful sale of Title 1 centerfire firearms and other uncategorized long guns, as well as its federal due process and

---

11 Although there is no statutory basis for a pretrial motion to dismiss, the Attorney General argued, without opposition, that the motion was proper because DOJ modified the DES during the litigation, citing *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574 ("[w]hen events render a case moot, the court, whether trial or appellate, should generally dismiss it") and *Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 915 ("a trial court may, under certain circumstances, invoke its limited, inherent discretionary power to dismiss claims with prejudice"). The trial court construed the motion to dismiss as the functional equivalent of "a general demurrer [that] may be filed at any time where the question is whether the complaint states a cause of action."

taxpayer causes of action.[12] Nor does Franklin Armory challenge the court's determination that there was no reasonable likelihood the parties' dispute would recur to warrant discretionary review of a moot issue. Rather, Franklin Armory's sole contention is that the court erred in disposing of these causes of action because Senate Bill 118 did not eliminate the court's ability to grant relief regarding "pre-adoption purchases of the centerfire Title 1." (Capitalization and boldface omitted.)

Specifically, Franklin Armory argues it suffers ongoing harm notwithstanding the DES modification, because Senate Bill 118 "operates to prevent the transfer (and subsequent registration) of centerfire [Title 1 guns]" that are pending (i.e., where the customers made a deposit for the firearms when it was lawful to purchase them). The court still has the power to address this harm, Franklin Armory argues, "by the relief [it] seek[s]—that is, narrowly enjoining enforcement of SB 118 to the extent that it blocks the transfer and registration of [Title 1] firearms for which deposits were made before August 6, 2020."[13]

---

[12] On appeal, Franklin Armory does not challenge the trial court's order dismissing its eighth cause of action for declaratory and injunctive relief for DOJ's alleged violation of the APA in administering the DES.

[13] We reject the Attorney General's contention that Franklin Armory waived this issue by amending its complaint after the trial court sustained DOJ's demurrer to the first amended complaint with respect to the declaratory and injunctive relief and writ of mandate claims, because at the time of the court's ruling on the demurrer, the court had stayed Franklin Armory's due process and taxpayer causes of action. We deny Franklin Armory's October 6, 2025 request to augment the record on

This argument lacks merit. The complaint admits the centerfire Title 1 is an assault weapon under section 30515, subdivision (a), as amended by Senate Bill 118, and that sales of the gun were effectively banned under AWCA after August 6, 2020. Senate Bill 118 also provided that AWCA did not prohibit possession of a newly designated assault weapon by a person who "*lawfully possessed* that assault weapon prior to September 1, 2020." (§ 30685, subd. (b), italics added.) Yet the complaint does not allege that any Title 1 gun was ever sold or transferred to, or lawfully possessed by, anyone before September 1, 2020. On the contrary, the complaint expressly alleges Franklin Armory "has been unable to transfer approximately 35,000 FAI Title 1 series firearms reserved via earnest money deposits."

Regardless of whether DOJ intentionally and improperly delayed in modifying the DES until the Legislature had the opportunity to ban the centerfire Title 1, the enactment of Senate Bill 118 foreclosed the court's ability to allow centerfire Title 1 sales in California, including sales to customers who made deposits for the firearm. (See *Save Berkeley's Neighborhoods v. Regents of University of California, supra*, 91 Cal.App.5th at p. 885-888 [California Environmental Quality Act challenge to the adequacy of an environmental impact report (EIR) concerning university's campus development plan was mooted by amendments that narrowed EIR requirements for the university expansion and by post-amendment certification of a new EIR].)

---

appeal to include a certified transcript of the February 25, 2021 case management conference (discussing preservation of issues on appeal), which is not necessary to our decision on this issue. (Cal. Rules of Court, rules 8.155(a).)

Moreover, to the extent Franklin Armory seeks an order "enjoining enforcement of SB 118" to allow sales of the centerfire Title 1, such an order would improperly compel performance of an illegal act. (See *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2016) 7 Cal.App.5th 115, 123 [""“[m]andamus will not lie to compel the performance of any act which would be void, illegal or contrary to public policy”""]; *Torres v. City of Montebello* (2015) 234 Cal.App.4th 382, 403-404 [voter approval of initiative requiring competitive bidding on waste management services mooted action for writ and injunction compelling mayor to sign off on a no-bid contract approved by city council]; see also *Adoption of S.S.* (2021) 72 Cal.App.5th 607, 627 ["When the Legislature has addressed a specific situation, a court cannot wholly ignore the statutory mandate in favor of equitable considerations."].)

Franklin Armory points to a stipulated judgment and consent decree entered in March 2021 in *Sharp. v. Becerra*, U.S. District Court, Eastern District of California, Case No. 2:18-cv-02317-MCE-AC to argue that the court and DOJ can order retroactive authorization of assault weapons. The *Sharp* plaintiffs sued DOJ, Becerra, and others, alleging that individuals who possessed "bullet button" firearms, which in January 2017 were restricted as assault weapons pursuant amendments to AWCA, were unable to register their guns on DOJ's California Firearms Application Reporting System (CFARS), as required under amended section 30900, subdivision (b), prior to the statutory cutoff because of technical defects on CFARS. As part of the stipulated judgment, DOJ agreed to reopen the registration periods for individuals meeting certain requirements, including that "prior to January 1, 2017,

the person would have been eligible to register an assault weapon pursuant to subdivision (b) of Penal Code § 30900" and "the person lawfully possessed each assault weapon to be registered, prior to January 1, 2017."

Despite a superficial similarity, the *Sharp* consent decree does not show there is a viable equitable remedy in this case (nor is it binding authority). The *Sharp* decree did not authorize the possession, sale, or transfer of new assault weapons; instead, it extended the deadline to register bullet-button guns already in the registrant's lawful possession before they were recharacterized. As discussed, Senate Bill 118 recognized individuals' rights to possess guns that were recharacterized as assault weapons provided the individuals "lawfully possessed" their gun prior to September 1, 2020. (§ 30685, subd. (b).) No potential Franklin Armory customers fall into this category. The trial court correctly concluded Franklin Armory was seeking an "entirely different remedy of allowing individuals to newly obtain a banned assault weapon."

B. *The Trial Court Did Not Err in Granting Summary Judgment Because DOJ and Becerra Were Immune from Tort Liability*

1. *Standard of review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Gordon v. Continental Casualty Co.* (2024) 107 Cal.App.5th 89, 99.) A defendant moving for summary judgment has the initial burden of presenting evidence that a

cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Gordon*, at p. 99.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Gordon*, at pp. 99-100.)

""""We review the trial court's decision [on motion for summary judgment] de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Gordon v. Continental Casualty Co., supra*, 107 Cal.App.5th at p. 99.) Moreover, "where the propriety of a grant of summary judgment turns on the proper interpretation of a statute, . . . our review of that question of law is also de novo." (*Wilson v. County of San Joaquin* (2019) 38 Cal.App.5th 1, 9.)

2. *DOJ is not liable for failure to discharge a mandatory duty because the Penal Code does not require that DOJ modify DES in a particular manner or on a specific schedule*

Government Code section 815 of the GCA "abolishes common law tort liability for public entities." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899; see Gov. Code, § 815, subd. (a) ["[e]xcept as otherwise provided by statute: [¶] . . . [a] public entity is not liable for an injury, whether such

injury arises out of an act or omission of the public entity or a public employee or any other person"].) Accordingly, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183; accord, *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179 (*B.H.*) [under the GCA, "governmental tort liability must be based on statute"]; *State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1009 ["If the Legislature has not created a statutory basis for it, there is no government tort liability."].)

Franklin Armory alleged in the complaint that DOJ is directly liable for its tortious acts in preventing firearms dealers from recording their sales of Title I centerfire long guns into the DES system, under Government Code section 815.6. Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The Supreme Court has described the elements of mandatory-duty liability under Government Code section 815.6 as follows: "'First and foremost, application of section 815.6 requires the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been

under an obligation to perform a function if the function itself involves the exercise of discretion.'" (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 (*Guzman*); accord, *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 (*Haggis*).) "Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" (*Guzman,* at p. 898; accord, *County of Los Angeles v. Superior Court* (2024) 107 Cal.App.5th 160, 178-180 [Welf. & Inst. Code, § 361.3, requiring that a family services agency contact relatives given preferential consideration for placement of children removed from their home, did not create a mandatory obligation for agency to notify grandparents when a removal warrant had been served, and agency's policy and practice of providing such notice did not create a duty].)

"'Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be "designed" to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is "'one of the consequences which the [enacting body] sought to prevent through imposing the mandatory duty.'" [Citation.] . . . [I]f the benefit is "incidental" to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6.'" (*Guzman, supra,* 46 Cal.4th at p. 898; accord, *Haggis, supra*, 2 Cal.th at p. 499.) "If these two prongs are met, the next question is whether the breach of the duty was a proximate cause of the plaintiff's injury." (*Guzman*, at p. 898; see *B.H., supra*, 62 Cal.4th at p. 179 [summarizing elements of § 815.6 liability].)

For purposes of Government Code section 815.6, an "'[e]nactment'" means "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6.) "A plaintiff seeking to hold a public entity liable under . . . section 815.6 must specifically identify the statute or regulation alleged to create a mandatory duty." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 689; see *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1349-1350 ["[t]o assert liability under Government Code section 815.6 for breach of a mandatory duty, a plaintiff must specifically allege liability in his or her complaint and identify the applicable statute or regulation that imposes the alleged mandatory duty"; "the pleadings limit the issues on a motion for summary judgment"].) Further "'the mandatory nature of the duty must be phrased in explicit and forceful language.'" (*Groundwater Cases*, at p. 689; accord, *Guzman, supra*, 46 Cal.4th at p. 894.)

"'"Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." [Citations.] We examine the "language, function and apparent purpose" of each cited enactment "to determine if any or each creates a mandatory duty designed to protect against" the injury allegedly suffered by plaintiff.'" (*B.H., supra*, 62 Cal.4th at pp. 180-181; accord, *Guzman, supra*, 46 Cal.4th at p. 898.)

In its complaint and its opposition to the motion for summary judgment (as well as on appeal), Franklin Armory identified four Penal Code provisions that it alleged created a mandatory duty for DOJ to modify the DES to facilitate transfers of long guns that are not rifles or shotguns: sections 28155,

28205, 28215, and 28220. These provisions, whether considered separately or together, do not affirmatively "'*require* . . . that a particular action be taken'" by DOJ in operating the DES to facilitate sales of new types of firearms. (See *Guzman, supra*, 46 Cal.4th at p. 898.)

Section 28155 states that DOJ "shall prescribe the form of the register and the record of electronic transfer" for firearm sales. This section creates a mandatory duty for DOJ to provide a system for recording firearm sales information, which it did in creating the DES, and it has a continuing duty to support such system. But nothing in section 28155 required DOJ to take any specific action in designing the DES (for example, including particular pull-down menus), let alone imposed on DOJ a duty to modify the system to address new firearm designs on a particular schedule. For example, the Legislature could have required that DOJ modify the DES system within 60 days to enable new firearm types to be recorded in the DES. But it did not.

Section 28205, subdivision (c), provides (for transfers in or after 2003) that "*except as permitted by the department*, electronic transfer shall be the exclusive means by which information is transmitted to the department." (Italics added.) Franklin Armory cites this section for the proposition that the DES system is the exclusive means of transferring sales information unless DOJ specifies otherwise; Franklin Armory does not explain how this section imposes any mandatory duty on DOJ. Section 28215 specifies the obligations of the firearms dealer and purchaser with respect to information transmitted through the DES system. Section 28220 addresses DOJ's obligations with respect to how it uses information received through DES, for example, in

determining whether a purchaser is prohibited from owning a firearm.

These four sections, by their own language, do not create mandatory duties with respect to how the DES system is designed or the information that can be submitted, and to the extent they impose any duties on DOJ in creating the DES system, they confer DOJ with discretion. (See *California Highway Patrol v. Superior Court* (2008) 162 Cal.App.4th 1144, 1150-1151 [Veh. Code § 14602.6, subd. (a)(1), providing that a law enforcement "may" impound a vehicle whose driver's license has been suspended conferred discretionary authority, notwithstanding provision that "[a] vehicle so impounded shall be impounded for 30 days."].)

Moreover, as the trial court found, Franklin Armory admitted that DOJ had discretion in how it operated the DES to allow sales of new gun types such as the Title 1. As alleged in the complaint, DOJ could eliminate the "technological barrier" to Title 1 sales by adding an option for "other" firearms to the long gun menu, but it could also "permit[] the user to proceed without completing the subtype categories" or "authorize[] any of a multitude of alternative means pursuant to the authority granted it by Penal Code section 28205, subdivision (c)," such as instructing dealers to select one of the existing menu options and make an annotation in one of the system's "comment" fields. In its separate statement in opposition to summary judgment, Franklin Armory likewise admitted that in lieu of modifying the DES at all, DOJ had authority under section 28205 to create "an alternative procedure for submission of the purchaser and firearm information."

Further, section 28245 provides, "Whenever [DOJ] acts pursuant to this article as it pertains to firearms other than handguns, the department's acts or omissions shall be deemed to be discretionary within the meaning of the [GCA]." Section 28245 is in the same article—article 3—as sections 28205, 28215, and 28220. Thus, the Legislature made it clear that these sections do not create mandatory-duty liability under Government Code section 815.6. (See *Haggis, supra*, 22 Cal.4th at p. 500, fn. 2 [recognizing the "indisputable principle that the Legislature may, by later and more specific enactments, create exceptions to the general rule of liability set forth in section 815.6"].)

Section 28155 is not in article 3, so section 28245 does not apply. However, as discussed, section 28155 creates a mandatory duty only with respect to its obligation to prescribe the form of the record of electronic transfer, which DOJ has done. On appeal, Franklin Armory concedes that section 28155 "does grant DOJ discretion to prescribe the *format* of the register and record of electronic transfer." However, it argues that such discretion is "narrowly drawn" and "does not authorize [DOJ] to adopt a form that fails to capture the required information for *all* lawful firearms." As the source of this constraint, Franklin Armory cites section 28160, which states, in relevant part, "[f]or all firearms, the register or record of electronic transfer shall include all of the following information: [¶] . . . [¶] [t]ype of firearm." (§ 28160, subd. (a)(14).)[14] We are not persuaded.

---

[14] Although Franklin Armory did not rely on section 28160 in its complaint or opposition to summary judgment with respect to DOJ's mandatory duty (and the trial court therefore did not

Section 28160 does not direct DOJ to perform any act to ensure dealers will be able to report sales of a new type of firearm. Section 28160, subdivision (a)(14), only requires that the DES include the "[t]ype of firearm." As Franklin Armory alleged in paragraph 45 of its complaint, "[W]hile the 'type' of firearm (e.g., 'long gun' or 'handgun') is required, the 'subtype' [i.e., rifle, rifle/shotgun, shotgun] of a firearm is not mandated by Penal Code section 28160, subdivision (a)." Consistent with this position, Franklin Armory argued in its opposition to the motion for summary judgment, "DOJ could . . . have chosen to remove the technological barrier [to transfer of Title 1 firearms] by enhancing the DES to allow the user to proceed without selecting a firearm subtype." And as discussed, Franklin Armory argued that DOJ had discretion under section 28205, subdivision (c), to record transfers of the Title 1 without using the DES at all. Although Franklin Armory argues otherwise on appeal, we agree with its initial interpretation of these statutes: DOJ had discretion under the Penal Code to pursue a variety of methods to facilitate recording of sales of the Title 1 centerfire long gun, but nowhere in the Penal Code did the Legislature impose on DOJ a

---

address it), the complaint quotes the section generally, and Franklin Armory made this argument in its opposition to the motion for judgment on the pleadings. Although arguably Franklin Armory forfeited this contention, we conclude it has sufficiently identified the provision to preserve the argument on appeal. (See *Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802 ["the statute or 'enactment' claimed to establish the duty must at the very least be identified"]; cf. *Cerna v. City of Oakland, supra*, 161 Cal.App.4th at pp. 1349-1350 [the pleadings limit the duty statutes considered on summary judgment].)

mandatory duty to modify the DES to add an "other" category for new long guns. And even assuming DOJ had a continuing mandatory duty to ensure that sales information for the Title 1 could be transmitted to DOJ, nothing in section 28205 required that DOJ modify the DES system on a specific schedule.

Franklin Armory relies on *Ham v. County of Los Angeles* (1920) 46 Cal.App. 148, 162, for its holding with respect to public officer immunity that "[t]o the extent that [the] performance [of a public duty] is unqualifiedly required, it is not discretionary, even though the manner of its performance may be discretionary." However, *Ham* involved interpretation of the Pridham Act, a 1911 law limiting liability of public officials for road accidents in the context of common law immunity. (*Ham*, at pp. 160-161.) The case did not involve the GCA, which superseded the common law, nor the requirements to impose mandatory-duty liability under Government Code section 815.6. Moreover, as the Supreme Court has concluded in the context of section 815.6, "It is not enough [to create section 815.6 liability] that the public entity or officer may have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Haggis, supra*, 22 Cal.4th at pp. 498, 500-501 [city did not have mandatory duty with respect to issuance of permits to determine whether property had landslide hazard, but city officials had mandatory duty to give notice to property owner once inspection showed property was unstable under provision stating official "shall" give written notice]; accord, *Guzman, supra*, 46 Cal.4th at p. 898, 904 [county did not have implied mandatory duty to notify consumers of contaminated water supply despite obligation to provide local water system notice of monitoring and reporting requirements, to review monthly monitoring reports, and to

submit reports summarizing compliance violations].)[15]

### 3. *Becerra and DOJ's employees have immunity for their discretionary actions in modifying the DES*

Regardless of whether a public entity is immune from liability, in the absence of statutory immunity, a public employee is generally "liable for injury caused by his act or omission to the same extent as a private person." (Gov. Code, § 820, subd. (a); see *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*).) Further, under section 815.2, a public entity is vicariously liable for the torts of its employees. (*Caldwell*, at p. 980.) Conversely, if the employee is immune, there is no vicarious liability on the part of the public entity. (Gov. Code § 815.2, subd. (b); *Caldwell*, at p. 980.)

Government Code section 820.2 provides, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (See *Leon v. County of Riverside* (2023) 14 Cal.5th 910, 928 [Gov. Code, § 820.2 "confers a general immunity for discretionary acts taken within the scope of authority"].)

---

[15] Because we conclude the cited Penal Code provisions did not create a mandatory duty to modify the DES to facilitate Title 1 sales, we do not reach the second prong of the analysis to determine whether the mandatory duty is designed to protect against the kind of injury the plaintiffs suffered.

The Supreme Court in *Caldwell* recognized, as the court had previously held, that "almost all [public employee] acts involve some choice among alternatives," and thus "statutory immunity thus cannot depend upon a literal or semantic parsing of the word 'discretion.'" (*Caldwell, supra*, 10 Cal.4th at p. 981.) Instead, Government Code section 820.2 immunity is "reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,'" whereas "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." (*Caldwell*, at p. 981; see *Johnson v. State of California* (1968) 69 Cal.2d 782, 793.) Further, "a 'workable definition' of immune discretionary acts draws the line between 'planning' and 'operational' functions of government." (*Caldwell*, at p. 981; see *Johnson*, at p. 794.) For example, in *Nunn v. State of California* (1984) 35 Cal.3d 616, 622 to 623 (cited in *Caldwell*, at page 982), the Supreme Court held that the head of the Bureau of Collection and Investigative Services, the Bureau, and another state agency were immune from claims by a murdered private security guard that they had unreasonably delayed promulgating regulations "as directed" by provisions of the Business and Professions Code for firearms training required for private security guards to qualify to carry a defensive firearm because "implementation necessarily involves 'planning' rather than nondiscretionary 'operational' or 'street level' decisions."

Establishing immunity "requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages.'" (*Caldwell*, at p. 893; see *Johnson, supra*, 69 Cal.2d at pp. 794-795, fn. 8.) Even so, it is not necessary that the

discretionary acts involve "*strictly careful*, *thorough*, *formal*, or *correct evaluation*"—"[s]uch an standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." (*Caldwell*, *supra,* 10 Cal.4th at pp. 983-984 [members of school board were immune from liability under Gov. Code, § 820.2 for former superintendent's wrongful termination claims because the board made an "*actual*, *conscious*, *and considered* collective policy decision" to replace the superintendent].) "The immunity [afforded by Government Code, section 820.2] is broad" and "'applies even to "lousy" decisions in which the worker abuses his or her discretion, including decisions based on woefully inadequate information,'" and "no matter how horrible the outcome." (*Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1285.)

The cases cited by the Attorney General addressing the distinction between discretionary acts and ministerial functions for purposes of section 820.2 immunity are instructive. The courts have held the following acts are discretionary: municipal employees' failure to remove electronic scooters parked improperly on sidewalks where the city issued an operating permit to the scooter company requiring it to comply with specified parking restrictions (*Hacala v. Bird Rides, Inc.* (2023) 90 Cal.App.5th 292, 306); sheriff's employees' allegedly fraudulent award of a contract for jail chaplaincy services (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 648-649); highway patrol officers' failure to inspect or remove a vehicle parked on a freeway shoulder where statute provided they "may" remove the vehicle (*Posey v. State of California* (1986) 180 Cal.App.3d 836, 849-850, 852); and DOJ employees' failure to

take action against a health care provider that violated statutory regulations (*Roseville Community Hosp. v. State of California* (1977) 74 Cal.App.3d 583, 589-590).

In this case, undisputed evidence shows that DOJ employees engaged in discretionary actions in responding to Franklin Armory's demand letter and developing a plan for DES modification, including "*basic policy decisions*," "'planning,'" and a "'[conscious] balancing of risks and advantages.'" (*Caldwell, supra,* 10 Cal.4th at p. 981, 983.) Bureau of Firearms chief Mendoza attested how, after receiving the demand letter, members of her group and the application development team conducted a review to determine the staffing and resources necessary to modify the DES. In formulating a plan and timeline, they considered numerous factors, including available personnel, resources, and funds, the time required, and public safety concerns—not only for the Title 1 long gun DES modification, but for numerous other pending requests for modifications. (See *Roseville Community Hosp. v. State of California, supra*, 74 Cal.App.3d at p. 590 ["A decision to devote available facilities and personnel to selected areas and to abstain from active pursuit of others is a policy or planning decision at a relatively high internal level."].)

DOJ staff determined it would take many months to implement Franklin Armory's preferred fix, require the diversion of staff from other projects, and necessitate modifications to other DOJ applications and databases. Staff also considered alternatives to adding an "other" option to the DES, including a stopgap modification tailored only to the Title 1, but they concluded there would be operational difficulties in recording sales under the temporary solution that raised public safety

concerns. And after Senate Bill 118 classified the centerfire Title 1 as an assault weapon, DOJ "decided after weighing competing priorities among the multiple information technology projects pending at that time in the middle of the COVID-19 pandemic," that the project could be safely deprioritized.

These actions that gave rise to Franklin Armory's suit fall on the "'planning'" and "'policy'" side of the ledger. (*Caldwell, supra*, 10 Cal.4th at p. 981.) Franklin Armory does not allege it was harmed by any "'operational'" functions or "lower-level, or 'ministerial,' decisions that merely implement[ed] [the] basic policy already formulated." (*Id.* at p. 981.) Franklin Armory does not contend, for example, that Title 1 sales could not take place because the DES software modification was inadequate, had glitches, or was delayed by the negligence of the software engineers.

On appeal, Franklin Armory challenges the "vague excuse[s]" Mendoza gave for DOJ staff's inaction and argues there are triable issue of fact concerning DOJ's timeline, motives, and whether DOJ had substantially engineered a solution in early 2020 but "delayed the final implementation of the fix until after the expedited passage of SB 118—a bill that DOJ itself proposed." However, these factual disputes do not rebut DOJ's showing that the challenged conduct was discretionary. If anything, Franklin Armory's emphasis on DOJ's and Becerra's alleged bad faith and malice in intentionally delaying the DES fix until they could ban the centerfire Title 1 underscores that it was DOJ's policy decisions, including its decision to delay implementation of the DES modification, that harmed Franklin Armory.

Franklin Armory contends the "refusal to fix the DES was not a 'basic policy decision' but a ministerial failure to implement Penal Code section 28160's mandate to record *all* firearm transfers." It further asserts its claims were "never about holding [DOJ and Becerra] liable for failing to 'make a *certain change* within a certain timeframe,'" but instead were about their "legal duty to remove a barrier to lawful firearm sales, no matter how they *did it*." This argument conflates the mandatory duty required for Government Code section 815.6 liability and the ministerial duty to carry out an already-formulated policy for purposes of Government Code section 802.2 immunity.[16] As discussed, Penal Code section 28160 did not compel DOJ to take any particular action on a specific timeline to modify the DES to facilitate sales of a new type of long gun, and the undisputed facts are that DOJ's challenged actions in delaying a remedy to the DES defect were discretionary policy decisions.

---

16 In its reply brief, Franklin Armory similarly conflates DOJ's immunity under Government Code section 815.6 with its public employees' immunity under section 820.2 in attempting to distinguish *Hacala v. Bird Rides, Inc., supra*, 90 Cal.App.5th at page 306, *Posey v. State of California, supra*, 180 Cal.App.3d at pages 848 to 850, and *Roseville Community Hosp. v. State of California, supra*, 74 Cal.App.3d at pages 589 to 590, arguing none of the cases "involved a mandatory duty to act."

## DISPOSITION

The judgment is affirmed. DOJ and Becerra are to recover their costs on appeal.

FEUER, J.

We Concur:

MARTINEZ, P. J.

SEGAL, J.

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Briseno, et al. v. Bonta, et al.*
Case No.: 2:21-cv-09018-ODW (PDx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**SIXTEENTH JOINT STATUS REPORT RE: *FRANKLIN ARMORY V. CALIFORNIA DEPARTMENT OF JUSTICE***

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Charles J. Sarosy
charles.sarosy@doj.ca.gov
Jerry T. Yen
Jerry.Yen@doj.ca.gov
1300 I Street, Suite 125
Sacramento, CA 95814
*Attorneys for Defendants*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2026, in Long Beach, California.

Haydee Villegas

Haydee Villegas